STARK LIQUIDATION COMPANY, Stark Nursery Company and James Duffin, Respondents,

v.

FLORISTS' MUTUAL INSURANCE COMPANY, Appellant.

No. ED 87852.

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 16, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 19, 2007.

Application for Transfer Denied Feb. 19, 2008.

Michael L. Young, Edwardsville, IL, for appellant.

Fairfax Jones, St. Louis, MO, Rudolph L. Veit, Jefferson City, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Florists' Mutual Insurance Company ("Florists") appeals from the judgment of the Circuit Court of Pike County granting Stark Liquidation Company's and Stark Brothers Nurseries and Orchards Company's (collectively "Stark") partial motion for summary judgment and James Duffin's [1] ("Duffin") motion for summary judgment with respect to Stark and Duffin's individual requests for a declaratory judgment that Florists' Commercial General Liability ("CGL") policies [2] covered Duffin's claims for Stark's negligence. Florists also appeals the trial court's grant of Stark's supplemental motion for summary judgment with respect to its claim for breach of insurance contract for vexatious refusal to defend and indemnify Stark against Duffin's lawsuit. We affirm.

### Facts and Procedural History

In 1993, Duffin asked his long-time family friend, Greg Davis, to find farmland that Duffin could purchase and Davis could manage. Duffin subsequently acquired a 40–acre tract of "very good farmland" in California and, in March 1994, Davis purchased approximately 3,500 Earli Sun Variety apricot trees from Stark to plant on 20 acres of the 40–acre tract. Over the next three years, although the trees grew and developed, they failed to yield "commercial quantities" of apricots, and in fact, many of the trees failed to produce any apricots at all. Davis wrote Stark explaining the problem, reporting that the trees developed many blossoms and small fruit forms, but then the fruit fell off prior to maturing. Stark tendered a claim to its insurer, Florists, which had issued a broad form CGL policy to Stark for the period between June 1, 1993 and June 1, 1994 and which was renewed for the period between June 1, 1994 and November 15, 1994.

On July 31, 1997, Florists denied coverage on the claim because the failure of the trees to bear fruit did not represent an "occurrence" under the meaning of the CGL policies and did not occur within the policies' applicable coverage periods. In April 1998, Duffin filed an action against Stark in the Superior Court of California, claiming that by selling and delivering defective trees in Spring 1994, Stark: (1) breached express warranties; (2) breached

---

1. Eden Produce, the company that managed Duffin's orchard, was a party to the underlying litigation and initially intervened with Duffin. However, prior to briefing the summary judgment motions, Eden Produce moved for voluntary dismissal of its claim against Florists.

2. Stark initially brought this action, in November 1999, solely as a request for a declaratory judgment as to the coverage of the CGL policies. However, in June 2003, after Stark and Duffin settled the California litigation, Stark sought, and was granted, leave to amend its petition to allege an action for breach of an insurance contract for the vexatious refusal of Florists to defend and indemnify Stark. In September 2003, following a settlement between Duffin and Stark in which Stark assigned its "right, title and interest" in its CGL policies to Duffin, Duffin moved, and was granted, leave to intervene pursuant to Rule 52.12 as a party-plaintiff. Thereafter, Stark and Duffin consolidated their motions for summary judgment as to the coverage issue. Stark and Duffin continued to seek separate judgments for indemnification as to the California arbitration award and Stark brought a separate supplemental motion for summary judgment as to the vexatious refusal claim.

implied warranties of fitness for a particular purpose; (3) breached an implied warranty of merchantability; (4) breached an implied warranty of usage of trade; (5) made intentional misrepresentations; and (6) made negligent misrepresentations. As the case progressed, Duffin expanded his claims by alleging that: (1) Stark negligently failed to test for bacterial canker in the trees before delivery; (2) Stark negligently brought bacterial canker to the orchard on the truck; (3) bacterial canker may have infected Duffin's adjoining nectarine orchard; and (4) Stark negligently failed to test the trees to determine if they were self-pollinating.

Upon receiving notice of the suit, Stark tendered the defense of the lawsuit to Florists and sought indemnity with respect to the claims contained therein. In June 1998, Florists again denied coverage, asserting that the claim not only did not constitute an "occurrence," but was also excluded by the "your products" and the "failure of your products" provisions.

In August 1999, Duffin sent a letter to Stark outlining the extent of his damages, concluding that the failure of the trees to yield commercial quantities of apricots resulted in damages of $565,541. Duffin further claimed that his "loss of an opportunity" to plant a productive orchard on the 20 acres occupied by the Earli Sun apricots resulted in additional damages of $414,430 because he had planted the defective apricot trees instead of the productive nectarine trees that he had planted on the adjacent 20 acres. Stark forwarded Duffin's letter to Florists, and in November 1999, Florists denied coverage. Florists contended that Duffin's letter was not a new claim, but merely a damage calculation. Florists reiterated that the CGL policies

either did not cover or expressly excluded Duffin's claims. On November 10, 1999, Stark brought the instant action against Florists in the Circuit Court of Pike County, Missouri seeking a declaration that the CGL policies covered Duffin's claims.

In April 2000, Stark sent Florists a letter warning that Stark would proceed to defend itself unless Florists "is willing to pay the damages claimed" and "take over the defense." In July 2000, Duffin indicated that he would consider a settlement in the range of $100,000–$125,000. Stark once again tendered the claim to Florists and Florists once again denied coverage. This time, Florists advised that a third provision in the CGL policies, the "loss of use" exclusion, barred coverage.

In November 2000, Duffin and Stark began to negotiate a possible settlement and came to an agreement-in-principle for the resolution of the dispute. Stark agreed to pay Duffin $30,000, assign all of its "rights, title and interest" in its Florists CGL policies to Duffin, and assign Duffin all of its "rights, title and interest" in its patent for the Earli Sun apricot trees. In exchange, Duffin agreed not to execute any judgment against Stark.[3] During the settlement negotiations, Duffin raised several new claims for damages as a result of a recently completed "Orchard Inspection Report." The report indicated the presence of a bacterial canker in the nursery stock of apricot trees that Duffin had received from Stark. Stark immediately informed Florists that the possible presence of bacterial canker in the nursery stock of apricot trees may have caused the damages sustained by Duffin's orchard and that the parties had begun negotiating a settlement. Florists requested that Stark

---

**3.** The parties did not finalize the actual settlement, however, until April 2003, following the arbitration hearing.

send copies of any materials supporting the alleged bacterial canker as a possible cause of the damage to the apricot trees. However, Florists undertook no investigation of Duffin's claims.

The following day, Stark faxed a second letter to Florists warning that Florists' decision not to participate in Duffin's and Stark's settlement negotiations was done at its own peril. Stark contended that the bacterial canker, which was present at the time of delivery to Duffin—allegedly carried on the delivery truck—not only caused the apricot trees to fail to produce fruit, but may have also spread to the adjacent 20 acres and infected the nectarine trees. Stark admitted that it may have been negligent in failing to inspect the trees for bacterial canker.

In April 2003, a California arbitrator awarded Duffin $565,541 in damages and found that: (1) the Earli Sun apricot trees contained bacterial canker when they arrived at Duffin's farm; (2) the canker from the apricot trees then spread to and damaged the adjacent orchard of nectarine trees; and (3) Stark's negligence in failing to test for and detect bacterial canker in the apricot trees resulted in the sudden and repeated exposure of the entire orchard, including, but not limited to, the nectarine trees. In June 2003, a California court entered a judgment confirming the arbitration award.

After the California court entered judgment with respect to the arbitration award, Stark moved forward with its action in Missouri for a declaratory judgment against Florists and amended its petition to add a claim for breach of contract for vexatious refusal. Duffin intervened as a necessary party-plaintiff and sought a declaratory judgment against Florists that the CGL policies covered the incident and required Florists to satisfy the California court's judgment. Each of the parties then moved for summary judgment and the trial court granted Stark's Motion for Partial Summary Judgment and Duffin's Motion for Summary Judgment, and denied Florists' Motion for Summary Judgment as to the declaratory judgment action.

Several weeks later, the trial court granted Stark's Supplemental Motion for Summary Judgment as to its breach of contract claim for vexatious refusal. The trial court found that: (1) Florists' failure to conduct an investigation in compliance with the Unfair Claims Settlement Practices Act[4] barred Florists from denying the claim on the ground of a policy provision, condition or exclusion; (2) Duffin's claim came within the coverage provisions of the CGL policies; and (3) Florists' failure to conduct a proper investigation of Duffin's claims rendered it liable for statutory penalties for vexatious refusal to pay. The trial court awarded Stark $202,478.46 in damages for Florists' breach of its duties to defend and indemnify, $142,863.55 for attorneys' fees and expenses, and $14,307 in statutory penalties for Florists' vexatious refusal to pay. The court awarded Duffin $565,541 with interest for damages to his orchard. Florists appealed.

### *Standard of Review*

Our review of summary judgment is *de novo*. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is frequently used in the context of insurance coverage questions, and the interpretation of an insurance policy is a question of law." *Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 312 (Mo.App. E.D.1999). We will up-

---

4. Section 375.1007. All statutory references are to RSMo 2000 unless otherwise noted.

hold the grant of summary judgment on appeal if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *ITT Comm'l Fin. Corp.*, 854 S.W.2d at 377. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. We view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* "Review of summary judgment is equivalent to review of a court-tried proceeding, and if as a matter of law the judgment is sustainable under any theory, it must be sustained." *Niswonger,* 992 S.W.2d at 312.

### Discussion

### A. Duty to Defend Loss of Use of Apricot Orchard

In its first point on appeal, Florists contends the trial court erred in granting Stark and Duffin summary judgment because Duffin's claim for loss of use of his orchard: (1) did not constitute an "occurrence" under the CGL policies; (2) did not occur during the policies' periods; and (3) was excluded from coverage by three separate policy provisions. In its second point on appeal, Florists contends that the trial court erred in granting summary judgment in Stark's and Duffin's favor because the theory that the apricot trees were lost due to bacterial canker: (1) did not constitute an occurrence under the policies; (2) did not occur during the policies' periods; and (3) was eliminated from coverage by three policy exclusions. In essence, Florists argues that the trial court erred in finding that it had a duty to defend Duffin's lawsuit against Stark because the CGL policies: (1) did not cover the lawsuit; (2) expressly excluded the lawsuit; and/or (3) were not in force at the time of the alleged injury. Because the first two points are closely related, we consider them together.

■■■ "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant [sic] on the probable liability to pay based on the facts ascertained through trial." *McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo. banc 1999). An insurer's duty to defend a suit against its insured is determined by comparing the language of the insurance policy with the allegations asserted in the plaintiff's petition. *Scottsdale Ins. Co. v. Ratliff,* 927 S.W.2d 531, 532 (Mo.App. E.D.1996). The insurer has a duty to defend if the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage. *McCormack Baron Mgmt. Serv., Inc.,* 989 S.W.2d at 170–71. An insurer, however, may not merely rest upon the allegations contained within the petition. *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 83 (Mo.App. W.D.2005). "Rather it must also consider the petition in light of facts it knew or could have reasonably ascertained." *Id.* "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Id.* at 79 (emphasis in original; internal citations omitted).

### 1. "Occurrence"

■■■ Florists contends that the damage alleged by Duffin does not fall under the CGL policies because it is not an "occurrence" within the meaning of the policies.

Specifically, Florists asserts that Duffin's claims were merely for breach of a defined contractual duty—regardless of whether Duffin framed the claim in terms of contract, negligence, or negligent misrepresentation. Duffin contends, however, that the CGL policies encompass harm caused by Stark's negligence and therefore, under his theories of negligence and negligent misrepresentation, Duffin's claims constitute an "occurrence."

The CGL policies limit coverage to property damage caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure," resulting in property damage that is "neither expected nor intended" by the insured. The CGL policies defines an "accident" as a "sudden, unforeseen, unintended event" and "property damage" as: "(1) [p]hysical injury to or destruction of property of others, including loss of use at any time; and (2)[t]he loss of use of property by others which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

■ The trial court did not err in finding that the CGL policies covered Duffin's claims. It is well-settled Missouri law that when a "liability policy defines occurrence as meaning accident Missouri courts consider this to mean injury caused by the negligence of the insured." *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 49 (Mo.App. E.D.1998) (internal citations omitted); *see also N.W. Elec. Power Coop., Inc. v. Am. Motorists Ins. Co.*, 451 S.W.2d 356 (Mo.App. W.D.1969). As we have noted, "[i]n its more general sense the term accident does not exclude human fault called negligence, but is recognized as an occurrence arising from the carelessness of [people] ... [w]hen used without restriction in liability policies, accident has been held not to exclude injuries resulting from

ordinary, or even gross, negligence." *Wood*, 980 S.W.2d at 49. Moreover, negligent misrepresentation, like other forms of negligence, falls within the meaning of accident and therefore, constitutes an "occurrence" when the insured neither expected nor intended the event. *Am. States Ins. Co.*, 71 S.W.3d at 237.

As the record reveals, Duffin consistently asserted that Stark negligently misrepresented the quality of the trees, negligently sold the trees without testing them and/or negligently allowed the defective trees to infect the remainder of the orchard. In addition, there is no evidence that Stark either intended or expected the crop loss and attendant economic damages that occurred as a result of the presence of the bacterial canker and/or the failure of the trees to be self-fruitful. Thus, Duffin's claims were an "occurrence" within the meaning of the CGL policies.

## 1. Occurrence During the Policy Period

■ Florists next argues that it did not have a duty to defend against Duffin's suit because his claim fell outside of the policies' applicable coverage periods. The CGL policies ran from June 1, 1993 to November 15, 1994. Duffin's complaint alleged that the trees failed to produce any marketable fruit in 1995 or 1996 and a very minimal amount in 1997; however, he did not seek lost profits for any failure by the trees to produce fruit in 1994. Duffin asserts that he did not seek recovery for the negligently infected trees themselves, but rather for the lost use of his orchard, which occurred when he planted the trees. Duffin contends that when he suffered a loss of apricot production, what he really suffered was a diminution in the economic value of his land. This loss, Duffin argues,

began immediately upon planting the negligently infected apricot trees.[5]

In arguing that Duffin did not sustain any property damages during the policies' periods, Florists relies upon *Shaver v. Insurance Co.*, in which the Southern District held that "[i]t is well settled that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the alleged wrongful act was committed, but is the time when the complaining party was actually damaged." 817 S.W.2d 654, 657 (Mo.App. S.D.1991),

*Shaver*, however, is inapplicable to the present analysis, because it did not address the loss of use of land resulting from negligently sold crops, but rather involved physical injuries resulting from a negligently designed product. In *Scottsdale Insurance Co. v. Ratliff*, we distinguished *Shaver* and the personal injury line of cases from those involving progressive damage to property. 927 S.W.2d 531, 534 (Mo.App. E.D.1996). We held that "*Shaver* does not support the claim that progressive damage does not occur until it is discovered." *Id.* *Scottsdale* concerned continuing damage to a home caused by a negligent termite inspection. *Id.* Rather than restricting coverage only to the period of time after the plaintiff had discovered the damage, we interpreted the injury as a continuing one, beginning at the time of the negligent inspection and continuing up until discovery. *Id.* Thus, we found that as a result of the continuing harm, "some of this damage necessarily occurred while the policy was in force[.]" *Id.*

As the record reflects, Duffin alleged continuing damage to his orchard caused by the apricot trees, in that the trees were negligently infected with canker in the Spring of 1994, the time of delivery. As a result of Stark's negligence, Duffin lost the use of his land resulting in the diminution of its value. Duffin's loss began during the policies' periods and continued until Duffin discovered that the trees were unable to produce fruit as a result of Stark's negligence. Accordingly, Florists had a duty to defend Stark against Duffin's lawsuit.

### 2. Exclusion Provisions

▮▮▮▮ The CGL policies contain several business risk exclusions, which are intended to exclude coverage for damages which are traditionally intended or expected by the insured. "Provisions restricting coverage are construed in favor of the insured and against the insurer, who has the burden of clearly and unambiguously expressing its intent to exclude." *Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.*, 756 F.Supp. 1232, 1238 (E.D.Mo.1991) (Missouri law). Moreover, the "insurer has the burden of proving that any exclusion upon which it relies is applicable." *Id.* "To prevail, an insurer need not show that each exclusion is sufficient to preclude coverage, but rather that any exclusion is sufficient to preclude coverage." *Id.*

### a. "Your Products" Exclusion

Florists contends that, as a result of Duffin's claims for damages stemming from the apricot trees' failure to produce a warranted amount of fruit, the CGL poli-

---

**5.** Other courts have approved of loss of use damages in the context of negligently sold crops or seeds. In *Hendrickson v. Zurich American Insurance Co.*, the California Court of Appeals held that an insurer had a duty to defend a commercial nursery when it negligently sold damaged strawberry plants to farmers. 72 Cal.App.4th 1084, 1091, 85 Cal. Rptr.2d 622 (1999). The court reasoned that as a result of the nursery's negligent sale of strawberry plants, "the growers suffered a loss of strawberry production, and thereby a loss of the use of their land" triggering the insurer's duty to defend. *Id.*

cies' "your products" exclusion bars Duffin's claims for: (1) damage to the trees themselves or wasted production costs; (2) lost profits and damages sustained from removing and replacing the apricot trees; and (3) loss of use of the 20–acre orchard in which the apricot trees were planted. In response, Duffin argues that exclusion does not bar coverage because: (1) Duffin did not seek coverage for the defective trees themselves; and (2) Stark never withdrew the product from the market.

The "your products" provision states that insurance does not apply to:

(a) To property damages to your products or your work performed arising out of such products, or any part thereof;

(b) To damages claimed for the withdrawal, inspection, repair, replacement or loss of use of:

(i) Your products;

. . .

(iii) Any property of which such products or work forms a part, if such products, work or property are withdrawn from the market or from use because of a known or suspected deficiency of them.

■ The first part of the exclusion does not apply because Duffin did not seek coverage for the apricot trees themselves. In *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.*, the Eighth Circuit held that an identical exclusion merely barred coverage for property damage to the named insured's products or work arising out of them. 740 F.2d 647, 650 (8th Cir.1984) (Missouri law). The court reasoned that these "exclusions make no reference to damage to property other than the insured's goods or other accidental loss resulting from the defective condition of the insured's work product." *Id.* Therefore, the court held "these exclusions do not bar coverage for damages to property other than that of the insured." *Id.; see*

*also Taylor–Morley–Simon, Inc. v. Mich. Mut. Ins. Co.*, 645 F.Supp. 596 (E.D.Mo. 1986) (Missouri law) (reasoning that because "plaintiff is only being sued for property damage suffered in plaintiff's own product arising out of that product or its parts" the "your product" clause prohibits coverage).

■ The second and third parts of the exclusion do not apply because Stark never recalled the apricot trees from the market or from use. While no Missouri case discusses this particular type of provision, the second and third sections comprise what courts colloquially refer to as the "sistership exclusion," because the exclusion "applies where products are recalled because of known defects in their sister products." *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 136 (3d Cir.1988) (Pennsylvania law). As the majority of courts have held, the "sistership exclusion" does not apply when the insured does not withdraw the product in question from the market because of a suspected defect in another identical product. *Corn Plus Coop. v. Cont'l Cas. Co.*, 444 F.Supp.2d 981 (D.Minn.2006); *Atlantic Mut. Ins. Co. v. Judd Co.*, 380 N.W.2d 122, 125–26 (Minn. 1986); *Honeycomb Sys., Inc. v. Admiral Ins. Co.*, 567 F.Supp. 1400 (D.Me.1983) (Maine law) (collecting cases); *Elco Indus., Inc. v. Liberty Mut. Ins.*, 90 Ill. App.3d 1106, 46 Ill.Dec. 319, 414 N.E.2d 41, 45 (1980); *see also Keystone Filler & Mfg. Co. v. Am. Mining Ins. Co.*, 179 F.Supp.2d 432, 439 (M.D.Pa.2002) (Pennsylvania law) ("This exclusion is called the 'sistership exclusion' because it applies where products are recalled because of known defects in their sister products."); *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wash.2d 37, 811 P.2d 673 (1991) (noting that the "weight of authority from other state and federal courts" hold that

the clause "applies only when an insured withdraws its own product from the market"); *Gulf Ins. Co. v. Parker Prods., Inc.*, 498 S.W.2d 676 (Tex.1973) (reasoning that the clause excludes "damages for withdrawal, inspection, etc. of property that is withdrawn from the market or use."). The damages claimed by Duffin have nothing to do with a withdrawal from the market by Stark. Therefore, the exclusion does not bar coverage.

### b. "Loss of Use" Exclusion

 Florists contends the CGL policies' "loss of use" exclusion bars Duffin's claims for damages for the loss of use of the apricot orchard, because his claim merely alleged that Stark's failure to deliver productive apricot trees resulted in the loss of use of the orchard. Duffin rejoins that Stark's negligent introduction of bacterial canker into Duffin's orchard resulted in the sudden and accidental physical damage to the apricot trees and the loss of use of the orchard land.

The "loss of use" exclusion states that insurance shall not cover "loss of use of property which has not been physically injured or destroyed, resulting from: (1) a delay in or lack of performance" by the insured; or (2) the failure of insured's products "to meet the level of performance, quality, fitness or durability warranted or represented" by the insured. The exclusion states, however, that insurance will cover the loss of use of other property resulting "from the sudden and accidental physical damage to, or destruction of the insured's products, after used by anyone other than the insured."

While no Missouri court appears to have considered a "loss of use" exception in a commercial general liability policy, in *United States Fire Insurance Co. v. Good Humor Corp.*, the Wisconsin Court of Appeals held that a "loss of use" exception

did not bar coverage for the loss of use of a warehouse when the insured's product was suddenly and accidentally injured and destroyed by the contamination of bacteria. 173 Wis.2d 804, 496 N.W.2d 730, 739 (App.1993); *see also Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1130–31 (8th Cir.2003) (Missouri law) (reasoning that a sudden and accidental event could cause a loss of use sufficient to render property inoperable); *Ellsworth–William Co-op. Co. v. United Fire & Cas. Co.*, 478 N.W.2d 77, 82 (Iowa App.1991) (holding that "loss of use" exception did not preclude coverage for grain storage bins rendered inoperable as a result of the insured's defective product); *Hendrickson*, 72 Cal.App.4th at 1091, 85 Cal.Rptr.2d 622 (holding that an insurer had a duty to defend a commercial nursery when it negligently sold damaged strawberry plants to farmers). As the record reflects, Duffin alleged that Stark's negligent introduction of bacterial canker into the apricot trees caused sudden and accidental physical damage to the trees and, as a result, Duffin lost the use of his orchard. We therefore conclude that, under these circumstances, the "loss of use" exclusion does not bar coverage.

### c. "Failure of Your Products" Exclusion

 Florists argues that because Duffin initially alleged that the trees failed to accomplish their intended or warranted purpose, the "failure of your products" exclusion bars all of Duffin's claims. The "failure of your products" exclusion is actually titled "Seed Merchants Errors & Omissions." The exclusion states: "Insurance does not apply to damage caused by: (1)[f]ailure of your products to: (a) accomplish its intended purpose; (b) accomplish its warranted purpose; (c) germinate properly; or (2) your failure to deliver or

provide species, variety, or type of seed ordered or requested by another." This provision bars coverage regardless of whether the failure results from a negligent act, error, omission, mistake, judgment or any other act committed by the insured.

Duffin asserts that this exclusion does not bar his claim, because the purpose of this exclusion is to restrict an insurer's liability arising out of the sale of seeds by seed merchants. Thus, Duffin contends, because Stark did not manufacture, sell, handle or distribute seeds, the provision does not apply. Florists, on the other hand, asserts that the CGL policies do not restrict the exclusion to the sale of seeds, but rather, that the exclusion applies to all products sold by Stark. In response, Duffin posits that adopting Florists' interpretation of the exclusion would render the provision ambiguous.

 "When construing an insurance policy, we must give the words their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Bowan ex rel. Bowan v. General Sec. Indem. Co.*, 174 S.W.3d 1, 7 (Mo.App. E.D.2005). "We find ambiguity when the language of an insurance policy is reasonably and fairly open to different constructions, and there is duplicity, indistinctness, or uncertainty of meaning." *Id.* at 7–8. "In interpreting whether the language used in the policy is ambiguous, the words will be tested in light of the meaning which would normally be understood by the average layperson, the layperson's definition will be applied unless it plainly appears that the technical meaning is intended." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App. E.D.1993). We consider whether a phrase is ambiguous by examining the policy as a whole with reference to the associated words and if we find the language of

the policy to be ambiguous, we adopt the interpretation most favorable to the insured. *Bowan*, 174 S.W.3d at 8. Furthermore, we strictly construe exceptions and limitations contained in insurance policies against the insurer. *Duncan v. Ray*, 768 S.W.2d 667, 669 (Mo.App. E.D.1989).

The "Seed Merchants Errors & Omissions" exclusion does not bar Duffin's claim because Stark did not manufacture, sell, handle or distribute seeds, and therefore, the provision does not apply. The plain meaning of the provision, when examined in light of the CGL policies, makes clear that the parties intended the provision to apply under limited circumstances, i.e., the sale of seeds by a seed merchant.

In addition, we agree that adopting Florists' interpretation would render the exclusion ambiguous. Florists asserts that the exclusion is not restricted to the sale of seeds, but rather, applies to all products sold by Stark. However, sections (1)(c) and (2) of the exclusion address only seeds. These sections state that "[i]nsurance does not apply to damage caused by: (1)[f]ailure of your products to . . . (c) germinate properly; or (2) your failure to deliver or provide species, variety, or type of seed ordered or requested by another." Moreover, the exclusion itself is entitled "Seed Merchants Errors & Omissions." Adopting Florists' interpretation renders sections (1)(a) and (b) unclear regarding whether they apply only to the sale of seeds or reach sales of other agricultural products. Thus, because the exclusion is ambiguous, "we adopt the interpretation most favorable to the insured" and hold that the exclusion applies only to the sale of sale of seeds by a seed merchant. *See Bowan*, 174 S.W.3d at 8.

Accordingly, because Duffin's claims for damages resulting from Stark's negligent sale and delivery of apricot trees fell within the coverage of the CGL policies, and

were not related to seeds, Florists owed Stark a duty to defend against Duffin's lawsuit.

### B. Duty to Defend Loss of Use of Nectarine Orchard

■ In its third and fourth points on appeal, Florists contends the trial court erred in granting Stark and Duffin summary judgment, because Duffin never pleaded or raised any purported claim of loss regarding the nectarine orchard and the damage did not occur during the policy period. Preliminarily, Florists argues that Duffin's failure to raise his claim for damage to the nectarine orchard in any court or arbitration document or to support his allegations with "actual facts" precludes this court from finding that Florists had a duty to defend. Duffin, however, asserts that he made the allegation of harm to the nectarine orchard during the arbitration hearing. Duffin contends that during the course of the arbitration, Florists received notice of a possible or potential claim for the nectarine orchard through a letter from Stark to Florists.

■ While Florists appears to define "actual facts" to mean proven facts, the law does not support such a distinction. "Actual facts are those facts which were known, or reasonably should have been apparent at the commencement of the suit and not the proof made therein or the final result reached." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 210 (Mo.App. E.D.1995). At the outset of the case, an insurer has a duty to defend if the complaint *merely alleges* facts that give rise to a claim potentially within the policy's coverage. *McCormack Baron Mgmt. Serv., Inc.*, 989 S.W.2d at 170–71 (emphasis added). The injured party may add additional claims *en route* to trial and, once the injured party has provided the insurer notice of these claims, the insurer will owe a duty to defend when

the new claim potentially or possibly comes within the policy's coverage. *See Truck Ins. Exch.*, 162 S.W.3d at 83 (reasoning that the fact that a "third party's claim against an insured would be subject to a motion to dismiss for failure to state a claim is not sufficient for an insurer to shun the duty to defend"). Thus, when Duffin made the allegations regarding the nectarine orchard during the arbitration hearing. when Florists received the letter from Stark stating that bacterial canker may have infected Duffin's nectarine orchard, Florists had sufficient knowledge of facts giving rise to a claim possibly or potentially within the CGL policies' coverage.

Florists next asserts that the CGL policies did not cover the nectarine orchard because the claim did not occur within the policies' periods. As noted above, the claim involved progressive damage to property because the harm began with delivery of the negligently infected apricot trees, allegedly spread to the orchard, and was therefore within the policies' periods. *See Scottsdale Ins. Co.*, 927 S.W.2d at 534. While the harm was continuing, the occurrence—the negligent introduction of bacterial canker—happened during the policies' periods. Thus, because Duffin's claims for damages to the nectarine trees resulting from Stark's negligent sale and delivery of apricot trees fell within the coverage of the CGL policies, Florists owed Stark a duty to defend it against Duffin's lawsuit. Points denied.

### C. The California Arbitration Award

In its fifth point, Florists contends the trial court erred in granting Stark and Duffin summary judgment, with respect to Florists duty to indemnify the California arbitration award. In response, Stark and Duffin contend that once Florists declined to defend Stark in the underlying matter,

it took the risk that the parties would enter into a settlement agreement and that it would be bound by a subsequent judgment resolving liability and damages.

 The duty to indemnify is "determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *McCormack Baron Mgmt. Servs., Inc.,* 989 S.W.2d at 173. "The insurer's duty to pay arises only after the suit by the third party is successful and the insurer becomes obligated to pay the resulting judgment." *Id.* "Where an insurer is bound to protect another from liability, it is bound by the result of the litigation to which such other is a party, provided it had the opportunity to control and manage it." *Cox v. Steck,* 992 S.W.2d 221, 224–25 (Mo.App. E.D.1999).

 When an insurer refuses to defend, the insured is "free to go its own way, and to make a reasonable settlement or compromise without losing the right to recover on the policy." *Truck Ins. Exch.,* 162 S.W.3d at 90; *see also Betts–Lucas v. Hartmann,* 87 S.W.3d 310, 325 (Mo.App. W.D.2002) ("An insured, although not engaging in collusive conduct for fraudulent or deceitful purpose, may act in a self-interested way in an attempt to protect himself from personal liability."). This is because, an "insurer, who relinquishe[s] the right to control the defense of the claim against the insured, no longer [has] any direct and protectible interest in the suit against the insured." *Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 482 (Mo.App. W.D.1992).

 The legal effect of the insurer's unjustified refusal to defend a claim because it does it not covered by the policy is a breach of contract. *Id.* "It is a breach that relieves the insured of the contractual obligation not to settle without the consent of the insurer without the loss of the right to recover on the policy." *Id.* For such breach of contract "the insured is released from the policy prohibition against incurring expenses and negotiating and settling claims" and the insurer is "thus obligated to reimburse the insured for such settlement, absent collusion, etc." *Landie v. Century Indem. Co.,* 390 S.W.2d 558, 562 (Mo.App.1965). An insured "cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." *Rinehart v. Anderson,* 985 S.W.2d 363, 371 (Mo.App. W.D.1998).

Relying on *James v. Paul,* 49 S.W.3d 678 (Mo. banc 2001), Florists claims that it is not bound to indemnify the judgment against Stark because Florists' and Stark's interests were "not aligned." *James,* however, does not assist Florists. In *James,* the insurer appealed a trial court's grant of summary judgment in favor of an injured party in an equitable garnishment action filed by the injured party. *Id.* at 682. The Supreme Court rejected the trial court's invocation of equitable estoppel, which had prevented the insurer from asserting an absence of coverage in the equitable garnishment action.[6] *Id.* at 689. After analyzing principles of collateral estoppel, the court held that "it would be inequitable for [the insurer] to be collaterally estopped ***from asserting its coverage defenses*** in the

---

**6.** The Court described the trial court's finding as follows: "[The insurer] had a duty to defend the [insured] in the tort action and its failure to do so amounted to a waiver of the

coverage defense in the garnishment action under the doctrine of estoppel *in pais.*" *Id.* at 682.

garnishment proceeding." *Id.* at 688 (emphasis added).

■■■ In the instant matter, Florists, is not arguing that it was improperly estopped from asserting its coverage defenses. Indeed, unlike the insurer in *James*, Florists not only had an opportunity to participate in the defense of the underlying claim but also to assert its coverage defenses in the instant action. At no time did the trial court use the prior California arbitration judgment to prevent Florists from fully litigating its coverage defenses and thereby protect its interests. Thus, in contrast to *James*, the record establishes that Florists was not precluded from "effectively asserting its policy defenses. . . ." *See id.* at 689. Only after determining that there was coverage did the trial court conclude that Florists was bound to indemnify Stark. Accordingly, the trial court did not err in determining that Florists had a contractual obligation to indemnify Stark with respect to the California judgment.

Lastly, Florists asserts that it cannot be bound by the judgment in the underlying matter because "Duffin's counsel drafted the final judgment of the arbitrator." In essence, Florists seems to imply that the California arbitration award was a product of collusion between Stark and Duffin.

■■■ Collusion is a "secret concert of action between two or more for the promotion of some fraudulent purpose." *Vaughan v. United Fire & Cas. Co.*, 90 S.W.3d 220, 224–25 (Mo.App. S.D.2002). "Collusion is also defined as an agreement between two or more persons to defraud another under the forms of law, or to accomplish an illegal purpose." *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.*, 931 S.W.2d 166, 179 (Mo.App. W.D. 1996). To prove collusion, Florists must show that Stark and Duffin "conspired . . .

to promote a fraudulent agreement." *See id.*

The record does not support Florists' contention that the California arbitration award was a product of collusion between Stark and Duffin. At Florists' request, the trial court granted Florists an opportunity to conduct discovery to determine if Duffin and Stark colluded to procure the California arbitration award. During discovery, Brent Bates, Florists' Senior Vice President and Director of Claims testified that he was not "aware of any facts that [Stark and Duffin were] colluding to present a fraudulent claim." Mr. Bates also stated that he did not think Stark and Duffin "conspired or cooked up ... a claim." Moreover, at no time during discovery did Florists adduce any evidence tending to establish that Duffin and Stark colluded or acted fraudulently to procure the California arbitration award. Accordingly, because Florists proffered no evidence of fraud or collusion on the part of Stark and Duffin, the trial court did not err in granting summary judgment to Stark and Duffin with respect to the indemnification of the California arbitration award. Point denied.

## D. Vexatious Refusal

■■■ Florists contends, in its sixth point on appeal, that the trial court erred in granting summary judgment in Stark's favor on its breach of contract/vexatious refusal claim because the Unfair Claims Settlement Practices Act ("the Act") does not allow a private right of action. We agree with Florists that the Act does not permit a private right of action. However, the record reflects that the trial court did not enter judgment on a claim for violation of the Act. Rather, the trial court granted summary judgment in Stark's favor for its vexatious refusal claim and awarded, among other things, attorneys' fees and statutory penalties

pursuant to Section 375.420 (the Missouri Vexatious Refusal to Pay statute). Although the trial court determined in its Order that Florists failed to comply with specific provisions of the Act as well as specific state regulations implementing the Act, we need not determine whether Florists' statutory non-compliance alone supports a claim for vexatious refusal. Here, the trial court additionally found, and the record supports, that, pursuant to the policies, Florists had agreed to investigate Stark's claim under its policies and then failed to do so without just cause or excuse. *See Dierkes v. Blue Cross & Blue Shield of Missouri*, 991 S.W.2d 662, 667 (Mo. banc 1999). Given our resolution of Florists' seventh point, which also challenges the trial court's award in favor of Stark on its claim for vexatious refusal, we deny Florists' sixth point.

In its seventh point on appeal, Florists asserts the trial court erred in granting summary judgment in Stark's favor on its vexatious refusal claim, because "there was no liability under its policy and that it had meritorious defenses."[7] In its February 24, 2006 Order granting Stark's Motion for Summary Judgment, the trial court found that Florists' failure to defend and indemnify Stark was without just cause or excuse and awarded statutory penalties under the Vexatious Refusal to Pay statute.[8] The trial court reasoned that the CGL policies incorporated the standards outlined in the Act and, as a result, Florists had contracted with Stark to conduct a reasonable investigation each time Stark tendered a claim. The trial court found that Florists—by failing to investigate each claim Stark tendered to Florists—

had repeatedly failed to comply with the provisions of the Act as incorporated into the policies. Accordingly, the trial court concluded, Florists was liable to Stark for the statutory penalties and reasonable attorneys fees provided under Section 375.420.

In support of its position that the existence of a "litigable issue" rendered summary judgment improper, Florists relies primarily on *Watters v. Travel Guard International*, 136 S.W.3d 100, 109 (Mo.App. E.D.2004). In *Watters*, we upheld the grant of a summary judgment in favor of the insurer where there was a "novel question of coverage and [a] dearth of evidence of a vexatious and recalcitrant attitude." *Id.* at 110. In particular, we noted that the record revealed that the insurer reviewed and investigated the insured's claim. *Id.* at 109.

Here, even if we were to agree with the insurer that the coverage issue is novel and thus "litigable," "the existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insured's attitude was vexatious and recalcitrant." *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984); *see also Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 76 (Mo.App. W.D.1995). In this case, the trial court based its determination of vexatiousness on Florists repeated failure to investigate the claims Stark tendered to Florists. Although Florists contends in its brief that it "timely denied coverage four times only after requesting and reviewing all evidence and testimony available to it," there is no citation to any record evidence from which a

---

7. Although Florists argues that it had reasonable cause to believe that there was no liability under the CGL policies and that it had meritorious defenses, both are merely factual situations in which an insurer may claim

"reasonable cause" under Section 375.296—i.e., the CGL policy either did not cover or expressly excluded Duffin's claim.

8. Section 375.296.

jury could reasonably infer that Florists investigated the claims that, as a result of Stark's negligent conduct, bacterial canker infected the apricot trees and caused Duffin to lose the use of his land. Because Florists failed to demonstrate the existence of genuine issues of material fact with respect to its failure to conduct any investigation, the trial court did not err. Point denied.

### E. Attorney's Fees on Appeal

Stark moves for attorney's fees incurred defending post-trial motions and this appeal. Stark contends that in accordance with our Local Rule 400,[9] a trial court's award of attorney's fees pursuant to Section 375.420, entitles it to attorney's fees on appeal.[10]

"The entitlement to attorneys' fees on appeal stands upon the same ground as that at the trial court level." *Vogt v. Emmons*, 181 S.W.3d 87, 97–98 (Mo.App. E.D.2005). Here, as discussed above, we affirmed the trial court's determination that Florists was obligated under Section 375.420 to pay Stark's reasonable attorney's fees. "Refusing to compensate an attorney for the time reasonably spent on appellate work defending the judgment below would be inconsistent with the intent of the legislature, which provided for recovery of fees." *Bldg. Owners & Managers Ass'n of Greater Kansas City v. City of Kansas City*, 231 S.W.3d 208, 214 (Mo. App. W.D.2007). Stark's request for fees is granted.

Although we have the "authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo.App. W.D.2002). Accordingly, we grant Stark's motion for attorney's fees on appeal and remand with directions to the trial court to determine the amount of the attorney's fees and expenses and enter judgment accordingly.

### *Conclusion*

We affirm the judgment of the trial court, grant Stark's motion for attorney's fees on appeal and remand to the trial court for a determination of attorney's fees on appeal.

BOOKER T. SHAW, C.J., and MARY K. HOFF, J., concur.

---

9. Local Rule 400 states, in pertinent part, that "[a]ny party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise and which this court has jurisdiction to consider, must do so before submission of the cause."

10. Florists does not contest the reasonableness of Stark's attorney's fees. Rather, Florists contends that there was no legal basis for awarding fees on appeal, because Florists had reasonable cause to believe there was no liability under its policy and it had a meritorious defense. Having resolved this issue above, we decline to reconsider the same argument.