

# In the Missouri Court of Appeals
# Eastern District

### <u>DIVISION ONE</u>

| | | |
|---|---|---|
| JON YUST, et al., | ) | No. ED111340 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | Cause No. 1511-CC00567 |
| | ) | |
| FASTERHOUSE, LLC, et al., | ) | Honorable Michael J. Fagras |
| | ) | |
| Respondents. | ) | Filed: October 1, 2024 |

### Introduction

Jon Yust and the Estate of Brigitte Yust ("the Yusts"), and Investors Title Company appeal from the trial court's order granting a new trial on its own motion and subsequent order and judgment granting judgment notwithstanding the verdict (JNOV) for FasterHouse LLC and Rebecca Moran. Because the trial court was without jurisdiction to grant JNOV, we reverse the trial court's order and judgment granting JNOV. We also reverse the trial court's order granting a new trial because the trial court failed to specify grounds for granting a new trial in violation of Rule 78.03 and the presumption that the order is erroneous under Rule 84.05(c) is unrebutted.[1]

### Factual and Procedural History

---

[1] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

*Facts*

The Yusts entered into a contract to purchase land from FasterHouse in February 2010. After entering into the contract, the Yusts requested a title commitment and boundary survey which identified three easements: one for Union Electric Company, one for transmission lines, and one for utilities and ingress/egress along the southern boundary. These easements appeared on the March 2010 boundary survey. The survey also included a septic system, a well, and a propane tank located on the southern utility easement.[2] These items located on the southern easement were considered survey defects, which the Yusts sought to resolve.

The Yusts hired realtor Rebecca Moran to help them with their home buying process. Moran filled out the sale contract for the Yusts. After both parties signed the contact, the Yusts extended the closing date multiple times to cure the defects in the March 2010 survey. Moran did not get involved in resolving the southern easement issues.

Around June 4, 2010, FasterHouse emailed Moran about an "Agreement to Adjust Boundary Line and Grant Easement." The boundary line adjustment would place the septic system, well, and propane tank for the Yusts' house on the Yusts' property because they were in the southern easement and encroached on the property of B.G., the Yusts' southern neighbor.[3] In exchange for moving the boundary lines to place the septic system, well, and propane tank on the Yusts' property, there would be a northern 25-foot wide ingress/egress easement for D.G., the Yusts' eastern neighbor and B.G.'s relative. This email also contained a description and drawing

---

[2] Evidence was presented that this southern easement was vacated in 1997 and is separate from the Union Electric and transmission line easements. All parties seem to agree that the southern easement was vacated. We express no view as to the status of the southern easement at the time of the Yusts' purchase.

[3] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

of the northern easement on the property. Moran did not recall getting this email, but stated she would have immediately forwarded it to the Yusts. Moran also advised the Yusts to obtain an attorney after getting this email. Moran was under the impression that Jon Yust was aware that the boundary line adjustment and easement were an ongoing process. Yust denied ever receiving this information.

On June 24, 2010, FasterHouse granted the proposed northern easement to D.G., the Yusts' eastern neighbor. The easement was 25 feet wide and 750 feet long and ran along the northern boundary of the property. This easement was recorded on June 30, 2010. The easement was granted as part of the boundary line swap so that the amount of land B.G. lost along the southern boundary of the property would be recovered by the northern easement. FasterHouse claimed the Yusts were aware of the boundary line swap and easement proposal, but Jon Yust denied any knowledge of those issues.

On July 9, 2010, the Yusts went over the June 30, 2010 Title Commitment with the closer from Investors Title Company. The northern easement was in this title commitment, but it was not contained in a June 24, 2010 boundary survey. Investors Title Company stated it reviewed the northern easement with the Yusts and the Yusts showed no hesitancy at closing. The Yusts closed on the property on July 9, 2010. Jon Yust denied that he was advised of the northern easement at closing or at any time prior to closing.

In August 2014, a family member of D.G., the easement holder, made the Yusts aware of the northern easement on their property. In response, the Yusts filed suit against FasterHouse for breach of contract, Investors Title Company for negligent misrepresentation, and Moran for breach of fiduciary duty, among other defendants not party to this appeal. The case proceeded to trial.

*Procedural History*

The parties tried the case over five days in December 2022. At the conclusion of the trial, the jury found in favor of the Yusts on their breach of contract claim against FasterHouse and their breach of fiduciary duty claim against Moran. The jury found in favor of Investors Title Company on the Yusts' claim of negligent misrepresentation.

On December 9, 2022, the trial court entered a document denominated an "ORDER" stating, among other things, "After return of jury verdicts, Court ENTERS JUDGMENT in accordance with jury verdicts . . . ." The trial court then set a deadline for filing post-trial motions.

FasterHouse and Moran filed motions for JNOV or, in the alternative, for a new trial. In its motion, FasterHouse argued the Yusts failed to make a submissible case for their breach of contract claim because the Yusts presented no evidence of damages. FasterHouse also argued there was no evidence that FasterHouse breached the contract with the Yusts. In her motion, Moran argued the Yusts failed to make a submissible case for breach of fiduciary duty. Specifically, Moran argued the Yusts failed to adduce any evidence of damages or of the "failure to disclose and failure to seek expert advice."

On December 20, 2022, the trial court entered a document denominated "JUDGMENT AFTER JURY TRIAL" entering judgment in accordance with the jury's verdicts. The trial court then noted that the motions for JNOV or for a new trial would be noticed up and heard at a convenient time for all parties. On December 28, 2022, the trial court heard oral argument from all parties on the motions.

On January 18, 2023, the trial court entered an order, stating, in whole, "The Court, on its own motion, GRANTS A NEW TRIAL in the above cause of action." On January 20, 2023, the

4

Yusts filed a notice of appeal from the order granting a new trial. On January 26, 2023, Investors Title Company also filed a notice of appeal from the order.

Then, on March 15, 2023, the trial court entered an order and judgment granting FasterHouse's and Moran's motions for JNOV. On FasterHouse's motion, the trial court reasoned that the Yusts failed to adduce any evidence of the breach of contract and damages. On Moran's motion, the trial court reasoned the Yusts failed to adduce any evidence showing a diminution in the value of the Yusts' property. The Yusts appealed from the trial court's order and judgment granting JNOV.

**Discussion**

We address the parties' various points out of order for purposes of clarity.

<u>The Trial Court Lacked Jurisdiction to Grant JNOV on March 15, 2023.</u>

We first address the Yusts' sixth point, which argues the trial court erred in granting JNOV to FasterHouse and Moran because the trial court had no jurisdiction to enter JNOV after the Yusts filed their notice of appeal.

*Standard of Review*

"Jurisdiction is a question of law that we review *de novo*." *Karrenbrock Constr., Inc. v. Saab Auto Sales & Leasing, Inc.*, 540 S.W.3d 899, 901 (Mo. App. E.D. 2018) (quoting *Matthey v. St. Louis Cnty.*, 298 S.W.3d 903, 905 (Mo. App. E.D. 2009)).

*Analysis*

The trial court, on its own motion, granted a new trial on January 18, 2023. Two days later, on January 20, 2023, the Yusts timely filed a notice of appeal.[4] A trial court loses almost

---

[4] Though the trial court's order granting a new trial "is not a 'final judgment' within the meaning of that term as used in Section 512.020, because [it] does not dispose of all of the parties and all of the issues and leaves matters for future determination," *Winchester v. Sunshine*,

5

all jurisdiction in a case upon the filing of a notice of appeal. *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 547 (Mo. App. E.D. 2011). More specifically, the trial court loses "the jurisdiction to exercise any judicial functions." *Guerra-Hernandez v. State*, 548 S.W.3d 368, 370 (Mo. App. E.D. 2018). Thus, the trial court lacked jurisdiction to exercise any judicial function when, nearly two months after the Yusts filed their notice of appeal, the court purported to grant the motions for JNOV of FasterHouse and Moran on March 15, 2023. Since the trial court lacked jurisdiction when it granted the motions for JNOV, its order and judgment granting JNOV is a nullity. *See Adams v. Crane*, 652 S.W.3d 402, 407 (Mo. App. W.D. 2022).

We therefore reverse the trial court's March 15, 2023, order and judgment granting JNOV to FasterHouse and Moran.

<u>The Trial Court Did Not Lack Jurisdiction to Grant a New Trial on January 18, 2023.</u>

Second, we consider together the Yusts' fifth point and Investors Title Company's first point, which argue the trial court lacked jurisdiction to grant a new trial more than 30 days after judgment was entered.

*Analysis*

Rule 75.01 states, "Not later than thirty days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party." According to Rule 74.01(a), "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' . . . is filed." We have made clear that "Rule 74.01(a) is strictly construed, and orders that are not properly denominated a judgment will not be considered final judgments even if it is obvious they were so intended." *Cornerstone Mortg., Inc. v. Ponzar*, 619

---

446 S.W.3d 278, 281 (Mo. App. E.D. 2014), Section 512.020(1) separately authorizes appeal from any "[o]rder granting a new trial." *See id.* at 281-82; *Travagliante v. J.W. Wood Realty Co.*, 425 S.W.2d 208, 211 (Mo. 1968).

6

S.W.3d 524, 531 (Mo. App. E.D. 2021). When an order is not denominated a judgment, it is not a final judgment under Rule 74.01(a), and the time period in Rule 75.01 does not apply. *Id*; *see also Schiele v. Durnal*, 670 S.W.3d 482, 484 (Mo. App. S.D. 2023).

The Yusts and Investors Title Company point to the trial court's December 9, 2022 entry of the document denominated an "ORDER," which stated, "After return of jury verdicts, Court ENTERS JUDGMENT in accordance with jury verdicts . . . ." They argue the trial court entered judgment in this order, and therefore the 30-day time period for the court to order a new trial under Rule 75.01 began to run on December 9, 2022. They maintain that, when the trial court granted a new trial more than 30 days later, on January 18, 2023, it was out of time and lacked jurisdiction.

The Yusts and Investors Title Company are mistaken in deeming the trial court's December 9, 2022, order a judgment. The document is denominated an "ORDER" and not a judgment. Thus, pursuant to Rule 74.01(a), the document is an order and not a judgment. *See Cornerstone Mortg., Inc.*, 619 S.W.3d at 531. This is so even though the language of the order purports to enter judgment. *See id.* Because the trial court's order is not a judgment pursuant to Rule 74.01(a), the 30-day time period in Rule 75.01, which begins to run only upon entry of judgment, did not begin to run upon the trial court's entry of its order on December 9, 2022. *See Schiele*, 670 S.W.3d at 484; *Cornerstone Mortg., Inc.*, 619 S.W.3d at 531.

Rather, the trial court did not enter judgment until December 20, 2022, in a document denominated "JUDGMENT AFTER JURY TRIAL." That document, properly denominated a "JUDGMENT," started the 30-day time period in Rule 75.01 for the trial court to order a new trial. *See Cornerstone Mortg., Inc.*, 619 S.W.3d at 531. When the trial court, on its own motion, granted a new trial on January 18, 2023, it did so within the 30-day time period in Rule 75.01.

The Yusts' fifth point and Investors Title Company's first point are denied.

<u>The Trial Court Erred in Granting a New Trial.</u>

Next, we consider FasterHouse's second point, which argues the trial court did not err in granting a new trial on the grounds that the jury was confused by the instructions and the Yusts failed to prove damages, among other things. We also consider the Yusts' second and third points responding that the trial court erred in granting a new trial on the same grounds. Finally, we consider the second point of Investors Title Company, in whose favor the jury found on the Yusts' negligent misrepresentation claim, arguing the trial court erred in granting a new trial because the jury was not confused by the jury instructions.

*Standard of Review*

Rule 78.03, aptly titled "Order Granting New Trial Shall Specify Grounds," mandates, "Every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted." In turn, Rule 84.05(c) states, "When a trial court grants a new trial without specifying of record the ground or grounds on which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial." *See Farm Bureau New Horizons Ins. Co. of Missouri v. Smith*, 608 S.W.3d 808, 811 (Mo. App. S.D. 2020). When "the trial court fails to specify the grounds upon which it grants a motion for new trial, it is the respondent's burden 'to affirmatively demonstrate that there was some adequate, nondiscretionary ground for a new trial.'" *Id.* (quoting *Bishop v. Carper*, 81 S.W.3d 616, 619 (Mo. App. W.D. 2002)). "In meeting this burden, the respondent is confined to the errors specified in [its] motion for new trial and [its] brief." *C.M. v. K.M.*, 878 S.W.2d 55, 56 (Mo. App. E.D. 1994); *see also Norman v. Landing*, 681 S.W.2d 8, 10 (Mo. App. E.D. 1984) ("In meeting the burden, respondents are confined to the errors specified in both their motion for new trial and their brief.")(internal quotation omitted).

8

*Analysis*

In the usual case under Rule 84.05(c), the trial court has granted a party's motion for new trial without specifying the grounds for doing so. *See, e.g., Farm Bureau*, 608 S.W.3d at 810; *Reynolds v. Carter Cnty.*, 323 S.W.3d 447, 448 (Mo. App. S.D. 2010); *Stewart v. Stewart*, 901 S.W.2d 302, 303 (Mo. App. W.D. 1995); *C.M.*, 878 S.W.2d at 56. The plain language of Rule 78.03 requires every order for new trial to specify on the record the grounds on which the new trial is granted, and failure to do so renders the trial court's order granting the motion for new trial presumptively erroneous under the plain language of Rule 84.05(c). Nonetheless, from Rule 84.05(c)'s suggestion that the presumption of error in granting the motion for new trial may be rebutted, our courts have fashioned a rule that we may glean some adequate, non-discretionary ground for granting the motion for new trial from the trial errors articulated by the moving party in both his motion for new trial and in his appellate brief as respondent. See *Farm Bureau*, 608 S.W.3d at 811; *Bishop*, 81 S.W.3d at 619; *Norman*, 681 S.W.2d at 10.

Here, we are presented with a different, and somewhat peculiar, procedural posture: the trial court, *on its own motion*, granted a new trial without specifying any ground for doing so. This, despite that both FasterHouse and Moran had filed motions for new trial articulating grounds for a new trial, the motions remained pending, and the trial court held a hearing and heard argument from all parties on the motions. This procedural posture, apparently one of first impression, places this Court in the untenable position of guessing at the grounds for the trial court's order granting a new trial.

As explained, we typically would look to the errors specified in respondents' motion for new trial to find some adequate, non-discretionary ground supporting the trial court's order. Here, FasterHouse and Moran stated in their motions arguably adequate, non-discretionary

9

grounds for a new trial. But the trial court did not grant FasterHouse's or Moran's motion for new trial. That the trial court was aware of the motions, held a hearing and heard argument on the motions, then did not grant the motions, but instead granted a new trial on its own motion, would seem to suggest the trial court rejected the grounds stated in the parties' motions. On the other hand, that the trial court later granted the parties' motions for JNOV on essentially the same grounds would seem to suggest the trial court credited the grounds stated in the motions. That said, the trial court lacked jurisdiction to enter the order granting JNOV in the first place, and it is a nullity. *See Adams*, 652 S.W.3d at 407.

Ultimately, we can only speculate, and Rules 78.03 and 84.05(c) and the applicable caselaw require more than speculation to affirm an order reversing a jury verdict and granting a new trial without specifying any ground for doing so. The trial court was required to state the grounds on the record for granting a new trial. Because it did not, its order is presumptively erroneous. FasterHouse could rebut that presumption by directing us to grounds in the motions for new trial. But the trial court did not grant the parties' motions for new trial. The court's own motion, which it did grant, did not state any ground for a new trial. On these facts, we decide only that the presumption that the trial court's order was erroneous has gone unrebutted by FasterHouse.[5]

We reverse the trial court's order granting a new trial and remand this matter to the trial court for further proceedings consistent with this opinion. Because we reverse the trial court's order granting a new trial and remand, we need not address the parties' remaining points.

---

[5] Moran did not file a brief on appeal and likewise has failed to rebut the presumption of error. *See Zimmer v. Belden*, 387 S.W.3d 393, 394 (Mo. App. S.D. 2012) (Where respondents filed no brief on appeal, they failed to meet their burden to rebut the presumption in Rule 84.05(c) that the trial court erred in granting a new trial.).

Attorney's Fees

Prior to submission of the case, the Yusts filed a motion for attorney's fees on appeal. The Yusts ask this Court, should we determine that attorney's fees are proper, to "remand the issue of the just and proper amount of attorney's fees incurred on this appeal."

"Missouri follows the 'American Rule,' which provides that litigants are generally required to bear the expense of their own attorney's fees absent statutory or contractual authorization." *Premier Valet, LLC v. Premier Valet Servs.*, LLC, 667 S.W.3d 144, 149 (Mo. App. E.D. 2022). A party may recover attorney's fees on appeal "if they are authorized by a written agreement that is the subject of the issues that are presented in the appeal." *Id.* at 150.

The contract between the Yusts and FasterHouse provides: "In the event of litigation between the parties, the prevailing party shall recover, in addition to damages or equitable relief, the cost of litigation including reasonable attorney's fees." Since the Yusts are the prevailing party on this appeal, they are entitled to attorney's fees on appeal from FasterHouse pursuant to their written agreement.

"Although our Court has the 'authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested.'" *Solomon v. St. Louis Cir. Att'y*, 640 S.W.3d 462, 480 (Mo. App. E.D. 2022) (quoting *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 402 (Mo. App. E.D. 2007)). Accordingly, we grant the Yusts' motion for attorney's fees on appeal and remand with instructions to the trial court to determine the appropriate amount of attorney's fees on appeal.

**Conclusion**

11

For the foregoing reasons, we reverse the trial court's order and judgment granting JNOV to FasterHouse and Moran. We also reverse the trial court's order granting a new trial and remand for further proceedings consistent with this opinion. Finally, we direct the trial court on remand to determine the appropriate amount of attorney's fees on appeal.

_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

12