MARY H. KNIGHT, TRUSTEE, ETC., ET AL., RESPONDENTS, v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, APPELLANT.—49 S. W. (2d) 682.

Kansas City Court of Appeals. January 11, 1932.

*Fyke* and *Hall* for respondents.

*Hogsett, Smith, Murray & Trippe* for appellant.

ARNOLD, J.—Action upon a policy of fire insurance issued by the defendant to Guy Knight in the sum of $1500, for a period of two years, on a dwelling house located in the city of Holden, Johnson county, Missouri. On February 14, 1924, the building so insured was totally destroyed by fire.

The suit was instituted in the circuit court of Johnson county, Missouri, on August 26, 1924, by Guy Knight and others, not necessary here to name. The plaintiffs are the heirs of Guy Knight who died on October 11, 1924. The defendant does not claim there is a defect of parties. On October 12, 1925, upon application of defendant, the venue was changed and awarded to the circuit court of Jackson county. On December 13, 1929, the cause was tried without the intervention of a jury, resulting in a judgment for plaintiffs in the sum of $1980. Defendant has appealed.

The petition is not assailed.

The answer, filed November 4, 1929, admits the issuance of the policy but denies the terms and provisions thereof are fully stated in the amended petition upon which the cause was tried; admits the fire occurred on February 18, 1924, but denies said building was owned by Guy Knight at the time of the fire, or for some months prior to that occurrence.

Further, the answer generally denies the allegations of the amended petition, except such as are admitted to be true as therein stated. As affirmative defenses, defendant pleads the conditions of the policy, to the effect (1) that the same shall be void—

"if the interest of the insured be other than unconditional and sole ownership" of the building and ground upon which the building is located; (2) that

"the insured as often as required, shall . . . submit to examination under oath by any person named by this company, and subscribe the same . . ."; (3)

"no suit or action on this policy, for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements . . .";

and (4) that the entire policy became and was void prior to and at the time of the fire, because on August 7, 1923, said Guy Knight and Mary H. Knight executed a warranty deed conveying to one Harry Friedberg the entire interest in the property described in the policy, and at the time of the fire said Guy Knight had no insurable interest therein; that there was no provision or agreement endorsed on said policy, or added thereto, in any wise modifying any of the provisions of said policy; that on May 23, 1924, defendant requested the insured, Guy Knight, to submit to an examination under oath by J. A. Baker, named by defendant to conduct said examination, and said Guy Knight then and there refused to submit to said examination; that on August 1, 1924, the defendant tendered (the amount not stated) to the insured, Guy Knight, the premium paid to defendant on said policy, with accrued interest thereon at six per cent per annum from the date of its payment to defendant, and that such tender was refused; that thereafter defendant tendered and paid the same into court for the use and benefit of said Guy Knight or his administrator.

It is unnecessary to state the other allegations of the answer inasmuch as the defenses presented thereby are not brought forward in the defendant's brief.

The reply is, first, a general denial and an allegation to the effect that the deed mentioned in the answer was a mortgage; that soon after the fire defendant was informed that said instrument, in fact, was given to secure a debt, yet, notwithstanding defendant had such knowledge, it never tendered to said Guy Knight in his lifetime, the premium for said insurance, nor has it tendered said sum to plaintiffs; and by reason thereof defendant has waived its said alleged defenses and is now precluded from claiming a forfeiture of said policy by reason thereof.

There are nine assignments of error, as follows: (1) That the court erred in refusing to find for defendant; (2) in refusing defendant's declaration of law I-D, in the nature of a demurrer at the close of all the evidence: (3) in giving plaintiff's requested declaration of law I-P, as follows:

"The court declares the law to be that if the court finds from the evidence that at the time the deed offered in evidence was executed that Guy Knight was indebted to Harry Friedberg, and that said deed was executed by Guy Knight and was accepted by said Friedberg for the purpose of securing said indebtedness and it was so agreed and intended by the parties thereto that it was given for the purpose of securing said indebtedness, if any, then the deed was in fact and in legal effect a mortgage, and the same does not constitute any defense to this action."

(4) In refusing defendant's declaration of law III-D, reading:

"The court declares the law to be that by the warranty deed dated August 7, 1923, from Guy Knight and Mary Knight to Harry Friedberg, the entire interest of Guy Knight in the insured property was conveyed to said Friedberg; and therefore Guy Knight had no insurable interest in the property described in the policy at the time of the fire; and at said time Guy Knight was not the unconditional and sole owner of said property. For these reasons the court declares the law to be that the plaintiffs are not entitled to recover in this case, and the finding and judgment must be for the defendant."

(5) In refusing defendant's requested declaration of law IV-D, as follows:

"The court declares the law to be that the warranty deed from Guy Knight and Mary Knight to Harry Friedberg, dated August 7, 1923, constituted a change in the interest and title of the insured property; and the insurance policy therefore became void on August 7, 1923, the date of said deed; and plaintiffs therefore cannot recover, and the finding and judgment must be for the defendant."

(6) In admitting over defendant's objections secondary evidence of witnesses Harry Friedberg and Mary H. Knight as to the purpose and effect of the conveyance of the insured property by Guy Knight to Harry Friedberg, and (7) in overruling defendant's motion to strike the same from the record. (8) In refusing defendant's requested declaration of law VIII-D, as follows:

"The court declares that by the policy sued on it was expressly provided that the insured, Guy Knight, as often as required by the defendant, should submit to examinations under oath by any person named by the defendant company, and should subscribe the same, and that this provision of the policy was valid and enforceable.

Now, therefore, if the court finds from the evidence that on May 23, 1924, at Clinton, Missouri, where Guy Knight then was, the defendant orally and in writing demanded of Guy Knight that he submit to an examination under oath by J. A. Baker, named by defendant to conduct said examination, and that said Guy Knight then and there refused to submit to said examination under oath,

then the court declares the law to be that the plaintiffs in this case cannot recover in this suit, and the finding and judgment must be in favor of the defendant.''

(9) And that the court erred in giving plaintiff's requested declaration of Law V-P, reading:

''The court declares the law to be that if the court finds from the evidence that the property destroyed was located in Holden, Missouri, and that Guy Knight was notified to appear at Clinton, Missouri, the failure of Guy Knight to appear and be examined at Clinton, Missouri, if he did so fail, constitutes no defense to this action.''

Assignments 1 to 7, inclusive, are so related that we will consider them together.

Harry Friedberg, an attorney at law, and the grantee in the deed, testified he was employed to defend Guy Knight who had been arrested upon a criminal charge; that he was to receive a fee of $8,000.00, including expenses which were not to exceed $1500; and that ''there was a written agreement made between us.'' The record reveals that thereupon, the following occurred:

''Mr. Hogsett: We object to the testimony, if it is to be in writing. The writing would be the best evidence of the agreement. A. (Continuing) It has either been lost or destroyed. I tried to find that. I had the stenographer in my office look for it. I have moved since then once or twice, and couldn't find it. I found some papers connected with this matter, but not that one, and this property was given me to hold as security for my fee.

''Mr. Hogsett: I move to exclude that part of the answer for the reason it is a statement of conclusion. If this evidence is admissible at all we suggest and ask that it be confined to what was said, and not let the witness give his conclusion.

''The Witness: I didn't mean to ramble off.

''Mr. Hogsett: I move to strike out that part.

''The Court: It is stricken out.'' . . .

''The Court: You said it was given to you as security. Just tell what the words were from which you draw the inference or conclusion it was given to you as security.

''The Witness: Well, naturally, with the instinct of a lawyer, I wanted some pay for my services, and I had some concern about seeing that I was compensated, and the Knight family couldn't do so at that time. They had no money to pay me.

''The Court: Was it said the title was conveyed to you for the purpose of securing the payment of your contract price?

''The Witness: I was to hold that until I was paid.''

The witness thereafter testified, without objection, except that cer-

tain questions were leading and suggestive and called for conclusions. Such objections are not now urged.

The sum of the evidence of the witness is that the warranty deed was made to secure the payment of the debt in the sum of $8,000, which was created by his employment. He was cross-examined at length as to what was said at the time the deed and written contract were made. It is evident the defendant sought to show by him that the actual agreement was for a reconveyance as distinguished from a mortgage. But the witness was not asked, either on direct or cross-examination, to state the recitals of the written contract. Neither did he, at any time, attempt to state the contents of said writing.

Mary H. Knight, the mother of Guy Knight, testified that the house was entirely destroyed by fire on February 14, 1924; that insured made his home in and claimed to own the house. The defendant asked leave to question the witness in aid of an objection. The leave was granted and defendant asked a number of questions but made no objections. The direct examination of the witness was resumed and she was asked to tell what was said in the conversation between Guy Knight and Friedberg. She replied, in substance, that Friedberg wanted to be assured that he would get his attorney fee; that he "wanted to be made safe in some way and the boy gave him the deed to assure him an attorney's fee." There was no objection to the question, nor to the answer. Thereafter the witness was cross-examined as to what was said between Guy Knight and Friedberg, and the following took place:

"Q. I understand that but I asked you what Guy Knight said. When Guy Knight—I mean Friedberg—asked $8,000, what did Guy Knight say about it? A. He told him that he would give him $8,000 to clear him and his brother in this deal, that he would let the land stand as security until the cases were fought—the cases were settled."

She was not asked to state, nor did she state any of the provisions set forth in the written contract. There was therefore no evidence as to the recitals contained in the written contract and no basis for a motion to exclude evidence of its terms. Having adopted the theory at the trial that evidence as to the conversation was admissible, the claim cannot be made on appeal that it was not admissible. If the deed was, in fact, a mortgage, Guy Knight retained an equitable title and the policy was not void. [Lee v. Fire Insurance Co., 203 Pac. 774.] Was the evidence sufficient to warrant the trial court in finding that the deed was, in fact, a mortgage? We think so. The whole color and cast of the transaction so shows. The whole agreement as to the amount of attorney fees to be paid was that Knight was to pay the sum of $8,000, and expenses not to exceed

$1,500. The transaction had its origin in the debt created by the contract between Knight and Friedberg, and the deed was made to secure the payment of that debt. Friedberg never, at any time, took or attempted to take possession of the property or claimed the right to do so. It is well settled that if a conveyance is executed for the purpose of securing a debt, though absolute in form, it is a mortgage, and whether a deed is intended as an absolute conveyance or a mortgage, must be determined from the intention of the parties at the time of the transaction.

"The character of the transaction is determined in its inception. If it was a mortgage in the beginning, it remained so" . . . and "moreover, if there should arise a doubt as to whether said deed was intended as a mortgage or a conditional sale, then such doubt shall be resolved in favor of a mortgage." . . . "Moreover, one of the prime tests in a case of this kind is whether the relation of debtor and creditor continues. If so, it is a mortgage." [Williamson v. Frazee, 294 Mo. 320, 330, 242 S. W. 958; Sheppard v. Wagner, 240 Mo. 409, 433, 144 S. W. 394.]

From what has been said, it is apparent the questions presented in said assignments 1 to 7, inclusive, are ruled against defendant.

Assignment 8 relates to the alleged failure of the assured to submit to an examination as required by the terms of the policy. On that subject the evidence of defendant's adjuster is that on March 4, 1924, he went to Holden to investigate the loss; that on the following day he saw the record of the warranty deed and reported the fact to the defendant; that he returned to Holden on the 28th day of May, 1924, to investigate the cause of the fire; that on the 23rd day of May, 1924, he saw the insured who was then confined in jail at Clinton, Missouri, and there arranged with the insured to go to the office of Mr. Poague and submit to an examination under oath; that insured did go to the place agreed upon and there said he did not care to testify on the matter. "I don't care to testify today," to which the witness replied, "Very well, Mr. Sheriff, you can take him back." Witness then prepared a written notice and caused the same to be served upon the insured, notifying him to appear at said office at five o'clock P. M. on that day and to bring with him for use in said examination any deeds, mortgages or evidence of title which he had, and there to testify to any facts relative to the loss; that said notice was served on the insured at four-fifteen P. M. on that day.

Even though insured wrongfully refused to submit to an examination, such refusal did not render the policy void. It merely postponed the right to sue. Upon due and timely notice it would have been the duty of the insured to submit to an examination. It will be noted the declaration concludes with the words "and the finding

and judgment must be in favor of the defendant." The most defendant now claims in this respect is that the suit was premature and should abate. The assignment is disallowed.

Assignment 9 relates solely to the effect of the written notice served on the insured. The notice was served on the insured while he was confined in jail and the defendant knew it; and it also knew that he could not respond to the notice except by the grace of the sheriff. Insured was given forty-five minutes in which to secure the documents called for, obtain his freedom and appear at the place named in the notice. The demand was unreasonable. [Murphy v. Insurance Company, 61 Mo. App. 323; Humphrey v. Insurance Company (Tex.), 231 S. W. 750.] The declaration was harmless.

But there are other reasons why the affirmative defense is untenable. The fire occurred February 14, 1924. On March 5, following, the defendant obtained knowledge that the deed, a warranty by its terms, had been executed by the insured. On May 23, 1924, defendant, as it contends, requested that the insured submit to an examination as provided by the terms of the policy, and that he refused to do so. On August 1, 1924, according to the testimony of defendant's adjuster, a tender of the return of the premium in the sum of $12.31 was made to the insured. The suit was brought on August 26, 1924. The defendant filed answer, a general denial, on October 13, 1924. That answer was refiled on December 21, 1924. On February 12, 1925, the defendant filed an amended answer in which its affirmative defense is pleaded, and an allegation that "defendant now tenders in court the sum of $18.30, the full amount of such premium, together with all costs that have accrued to this date in the cause." There is no allegation that a tender of return of the premium had theretofore been made. On October 23, 1929, defendant filed another answer, only a part of which is before us. Suffice it to say that in that part of the answer introduced, no reference is made to the warranty deed, the failure of the insured to submit to an examination or that tender of the premium had been made. Thus more than five years elapsed after the death of Guy Knight before the defendant, by answer, claimed that it had made an offer to return the premium to him.

The defendant introduced a certified copy of a record entry made in the cause under date of February 12, 1925, as follows:

"Defendant by attorney files in the office of the undersigned clerk of this court in vacation thereof, offer of judgment and deposits with the said clerk $18.30, amount of offer and also deposits $8.55 amount of costs herein."

It will be noted the record entry does not say the offer is made as a return of the premium. If it was intended as a return of the

premium, then the tender on August 1, 1924, of $12.31, was not sufficient in amount; but the offer is more than a mere tender of the money. It is an offer of judgment in the cause in the sum of $18.30, accompanied by a deposit to pay the same.

A tender is in the nature of a judicial admission that the amount tendered is actually due. [Berman v. Hoke, 61 Mo. App. 376; Wells v. Missouri-Edison Electric Co., 108 Mo. App. 607, 616, 84 S. W. 204.] The offer was an irrebuttable admission of indebtedness to the extent of the tender, regardless of the outcome of the action. [26 R. C. L. 650.] It is admitted the amount therein tendered was due at the time of the institution of the suit, August 26, 1924. [Giboney v. German Ins. Co., 48 Mo. App. 185, 193.] If a lawful tender was made before suit, and kept good, the defendant was not liable for costs. [Sec. 1259 R. S. 1929.] The legal effect of the tender of costs was an admission that defendant was liable therefor, and that the tender on August 1, 1924, was insufficient. There is no showing the amount tendered was sufficient to pay such costs.

It is apparent that defendant, by retaining the premium, as herein stated, waived the forfeiture pleaded. [Luthy v. Northwestern National Insurance Co., 20 S. W. (2d) 299; *certiorari* denied, 20 S. W. (2d) 46; Carroll v. Union Marine Insurance Co., 249 S. W. 691.]

The record reveals that the distinguished jurist who tried the cause ascertained the facts and applied the law. The correct result was reached. It follows the judgment should be, and is affirmed. All concur.