SHELTER MUTUAL INSURANCE
COMPANY, Plaintiff–
Appellant,

v.

Crystal CRUNK, Wesley Crunk, and
Kathy Collins, Defendants–
Respondents.

No. 24935.

Missouri Court of Appeals,
Southern District,
Division One.

April 23, 2003.

John L. Mullen, Keith A. Cary, Franke, Schultz & Mullen, P.C., Kansas City, for plaintiff-appellant.

Mark E. Turley, Colin P. Long, Smith Turley Long, Rolla, for defendants-respondents.

KERRY L. MONTGOMERY, Presiding Judge.

Shelter Mutual Insurance Company (Plaintiff) filed a declaratory judgment action against Defendants Crystal Crunk, Wesley Crunk, and Kathy Collins seeking a determination that a liability insurance policy issued by Plaintiff to Lee and Nina Geary does not provide coverage to Kathy Collins for the claim of Crystal Crunk.

The disputed section of Plaintiff's liability policy issued to Gearys provides, in pertinent part, that persons insured under the policy include:

> b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

The trial court found that Kathy Collins was acting as Gearys' real estate manager with respect to the premises where the accident in question occurred. Consequently, the trial court determined that Kathy Collins is covered by Plaintiff's liability policy regarding the suit brought by Crystal Crunk.

Plaintiff appeals, contending in its dispositive point, that the trial court erred in finding Plaintiff's liability policy covered Kathy Collins as to the Crunk claim because she was not acting as Gearys' real estate manager when the claim arose. We agree.

"In reviewing a declaratory judgment, the appellate court is to sustain the decree or judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Eaton v. State Farm Mut. Auto. Ins. Co.*, 849 S.W.2d 189, 191 (Mo.App.1993). "Where the issue on appeal is not the sufficiency of the evidence, however, we are not bound by and need not defer to the trial court's conclusions regarding the legal effect of its findings of fact." *Bremen Bank and Trust Co. v. Muskopf*, 817 S.W.2d 602, 604 (Mo.App.1991). "Moreover, where the findings of fact are derived from the pleadings, stipulations, exhibits

and depositions, or where the evidence is not controverted, no deference is due the trial court's judgment." *Id.*

In this case, the trial court's findings are derived from the parties' stipulation of facts, numerous exhibits, and portions of depositions read into evidence. Very little, if any, of the evidence is controverted, and no live witnesses testified.

The parties stipulated to the facts which follow. At all relevant times, the Lee and Nina Geary Irrevocable Trust held legal title to real estate and a dwelling located at 201 South Hickory in Salem, Dent County, Missouri (the premises). On May 29, 1997, the trustees entered into a contract for deed with Kathy Collins and her husband, John C. Collins. John and Kathy Collins have lived on the premises from May 29, 1997, to date of trial and lived at the premises on the date of the accident in question. The contract for deed provided that title to the premises would remain with the trustees until Collins paid the purchase price in full, and upon payment of the purchase price, legal title to the premises would be conveyed to them.

On June 29, 1999, Plaintiff issued a "Commercial General Liability Policy" to Lee and Nina Geary which provided insurance on the premises. At the time of the accident, later described, the insurance policy was in full force and effect. Plaintiff also issued a fire insurance policy to the Gearys which only provided for property damage insurance on the premises. The fire policy does not provide any liability coverage with respect to the claim involved in this matter.

Gaige Crunk was born on January 5, 1999, to Crystal and Wesley Crunk. On November 7, 1999, Kathy Collins agreed to baby-sit Gaige at the premises. Gaige died on that date when he drowned in a bathtub while in the care of Kathy Collins.

Crystal and Wesley Crunk are persons entitled to bring a wrongful death action regarding Gaige pursuant to § 537.080.[1] Crystal Crunk made a claim against Kathy Collins because of Gaige's death while in her care. Shortly after the accident, Kathy Collins notified Plaintiff of the claim.

Later, Crystal Crunk filed a lawsuit arising out of Gaige's death. Plaintiff was notified of the suit shortly thereafter. On August 15, 2000, Kathy Collins demanded liability coverage under the Plaintiff's policy issued to Gearys. Eventually, Plaintiff advised Kathy Collins that she was not insured under the policy, and Plaintiff refused to defend Kathy Collins in the suit without reserving its right to later deny coverage to her under the policy.

On December 28, 2000, while the wrongful death action was pending, Kathy Collins entered into an agreement under the terms of § 537.065 with Crystal and Wesley Crunk whereby Kathy Collins agreed to allow judgment to be taken against her in return for the Crunks' agreement to limit recovery to any insurance coverage that might apply to the claim asserted in the suit. Thereafter, Kathy Collins refused to allow Plaintiff to provide a defense subject to a reservation of rights.

On February 15, 2001, the wrongful death action was heard in Dent County. The trial court entered a judgment in favor of the Crunks against Kathy Collins in the amount of $1,500,000.

Other than the insurance policy provision presently in dispute, Plaintiff provides no other insurance that could provide liability coverage with respect to the premises in question. Plaintiff has never issued any insurance policies naming Kathy or John Collins as named insureds.

The stipulation of facts between the parties provides that Kathy Collins contends

---

1. Statutory references are to RSMo 2000.

she is insured under the insurance policy because she was acting as a "real estate manager" for the Gearys, within the meaning of the insurance policy at the time of Gaige's death and, therefore, she should be afforded liability coverage. Plaintiff contends that Kathy Collins was not insured under the provisions of the liability policy issued to Gearys.

The contract for deed between the Gearys and the Collins provided that buyers agreed to pay $25,000 for the premises in question at the rate of $57.14 per week together with interest thereon. Upon payment of the purchase price in full, the Collins were entitled to receive a warranty deed to the premises. Until such time the Collins were entitled to continue in possession of the property for and during the term of the contract for deed. The contract for deed contained numerous other provisions including the Collins' obligation for the care and upkeep of the property, for maintaining insurance on the home, and for payment of yearly taxes. In other words, the contract for deed contained standard provisions normally found in such installment land sale contracts.

The only Missouri case cited by the parties with similar facts to this case is *Bewig v. State Farm Fire and Cas. Ins. Co.*, 848 S.W.2d 521 (Mo.App.1993). There, a dog owned by Linda Hayden and kept at her residence bit the plaintiff. He sued Linda and obtained a $10,000 consent judgment. Plaintiff sought satisfaction of the judgment solely from State Farm.

Linda lived in a house owned by her parents and her aunt and uncle. The owners were named insureds under a State Farm Rental Dwelling Insurance policy covering Linda's residence. *Id.* State Farm's policy defined "insured" to include, "any person or organization while acting as real estate manager for the *named insured.*" *Id.* at 522. The evidence showed that Linda was responsible for (1) obtaining additional tenants for the premises, (2) paying the utility bills, and (3) maintaining the premises or advising the owners of needed repairs. *Id.*

The appellate court said:

While we are not inclined to view Linda as a real estate manager at all, the record does not indicate that she was acting in that capacity at the time of the occurrence which caused plaintiff's injury. The insurance is intended to protect the landlord and those acting in his behalf in regard to the property. It obviously does not protect employees or agents in their individual capacities unrelated to the landlord's interests.

*Id.* The court then held that plaintiff had the burden to show "Linda was a real estate manager of the property, and *that the injury occurred while she was acting in that capacity.*" *Id.* (emphasis added). Because the record failed to show Linda was acting in the capacity of a real estate manager at the time of the dog bite, the judgment for State Farm was affirmed.

■ Leaving aside the consequences of the contract for deed, a finding that Kathy Collins was Gearys' real estate manager when she was baby-sitting Gaige is contrary to the view expressed in *Bewig*, i.e., no coverage unless the injury occurs while the real estate manager is acting in relation to the owners' property interest. 848 S.W.2d at 522. As indicated in *Bewig*, the insurance is intended to protect the Gearys and their agents acting on Gearys' behalf in regard to the property. The insurance does not protect Gearys' agents in their individual capacity when their actions are unrelated to the Gearys' interest. Kathy Collins' baby-sitting and bathing of Gaige was in no way related to the Gearys' interest in the premises. Those activities regarding Gaige only furthered the interest of Kathy Collins, even if she could be viewed as a real estate manager. There-

fore, the trial court erroneously applied the law in finding that Kathy Collins was acting as Gearys' real estate manager at the time of Gaige's death.

■ The trial court relied on certain provisions in the contract for deed in concluding Kathy Collins was required to perform management duties for Gearys. The provisions relied upon by the court obligated Collins to:

(a) pay all accounts for services, labor and materials used to erect or repair improvement on the premises;

(b) pay all other liabilities or obligations and debts incurred that could result in any encumbrance on the premises;

(c) maintain the premises, keep it clean and in good repair;

(d) oversee the operation of the premises, including purchasing supplies for the premises, paying the utility bills, keeping the grass cut, and providing for the security and safety on the premises.

■ These provisions cannot be isolated from the purpose of a contract for deed. They must be viewed with an understanding of the characteristics of such an instrument.

A contract for deed, also referred to as an installment land sale contract, is used as a substitute or alternative to a mortgage or deed of trust. Under a contract for deed, the buyer of real estate makes a down payment and agrees to make remaining payments at a specified rate of interest in installments to the seller. The buyer normally takes possession of the property at the time the contract for deed is made. The seller agrees to convey the property to the buyer by delivering a warranty deed upon completion of the installment payments.

*Long v. Smith,* 776 S.W.2d 409, 413 (Mo. App.1989).

■ "The relation of vendor and purchaser exists as soon as the contract for the sale and purchase of land is entered into. Thereafter, equity regards the purchaser as the owner and the vendor as holding the legal title in trust for him." *Brewer v. Devore,* 960 S.W.2d 519, 521 (Mo.App.1998). Thus, by operation of law, Kathy Collins was an equitable owner of the premises at the time of Gaige's death. Her performance of the contract for deed terms continued Kathy Collins' equitable ownership of the premises as opposed to obligating her to manage the premises on behalf of the Gearys. The provisions in question pertain to obligations Kathy Collins was required to meet in order for her to eventually obtain legal title to the premises. Rather than imposing real estate management duties, the provisions are nothing more than obligation faced by every homeowner with regard to their property. The trial court misapplied the law in finding that the provisions in question transformed Kathy Collins into Gearys' real estate manager.

The judgment is reversed.

GARRISON and BARNEY, JJ., concur.