

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JAMES ROLLER AND<br>RUTH ROLLER, | ) | WD77611 |
| | ) | |
| Appellants, | ) | OPINION FILED: |
| v. | ) | |
| | ) | December 15, 2015 |
| AMERICAN MODERN HOME | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**Honorable Janet Lodwick Sutton, Judge**

**Before Division Four: Alok Ahuja, Chief Judge Presiding,**
**Thomas H. Newton, Judge, and David M. Byrn, Special Judge**

The Rollers appeal the trial court's declaratory judgment denying coverage for property damage to the Rollers' garage incurred by a fire started by Mr. Roller in a suicide attempt.

American Modern Home Insurance Co. (AMHIC) issued a manufactured homeowners policy to Mr. Roller. As a part of the coverage, AMHIC agreed to insure the residence "against risk of direct, sudden and accidental physical loss to covered property, unless the loss is excluded under SECTION I-EXCLUSIONS."

In December 2007, Mr. Roller set fire to the garage of his residence in an attempt to commit suicide. The fire caused damage to the "all metal garage" and various personal property contained within, resulting in a total loss. After starting the fire, Mr. Roller began suffering from the smoke and fumes, causing him to change his mind and exit the garage. Mr. Roller woke up his wife and informed her that the garage was on fire. Mrs. Roller called 911. Members of the KAW and Lake Viking Fire Departments arrived shortly thereafter, but determined the fire was "too strong to fight" and allowed it to burn. When Larry Todd Watson, a deputy of the Daviess County Sheriff's Department, arrived at the scene, Mr. Roller admitted that he set the garage on fire in an attempt to kill himself. Deputy Watson then took Mr. Roller into protective custody and transported him to Daviess/DeKalb County Regional Jail for issuance of a 96-Hour Mental Health Detention Order from the Circuit Court of Daviess County. After the commitment was issued, Mr. Roller was transported to Heartland Hospital in St. Joseph, Missouri.

Two days after the fire, Mrs. Roller notified insurance broker Ocker Insurance, about the fire and property damage. That same day, AMHIC representative, Joe Groh, contacted Mrs. Roller to explain the coverage and claim process. AMHIC then employed Great Southern Adjusting Inc. (Great Southern) to inspect the property, and its representative, Joe Holland, contacted Mrs. Roller to arrange for an inspection of the damaged property. During the investigation, Mr. Holland took pictures of the property; recorded Mrs. Roller's

2

alleged statements; and prepared a report for AMHIC and a "Personal Property Inventory Sheet" identifying the destroyed personal property, stating the estimated replacement cost of $21,240.00. The report also stated that Mr. Holland was unable to get a copy of the fire report from the voluntary fire department; the loss, however, appeared to be direct and sudden and he was unsure if it could be considered accidental. Upon completion, the report was sent to AMHIC where it was directed to Mr. Ted Parrott, an AMHIC claims adjuster.

After receipt of the report, Mr. Parrott contacted Mrs. Roller to advise her that he needed to conduct further investigation, including whether the "Innocent Spouse Doctrine" was applicable. He also informed her "that there was a possibility that [AMHIC] could make payment for the out-building of the adjacent structure in the amount of $10,500.00." A few weeks later, Mr. Parrott again contacted Mrs. Roller explaining that AMHIC attorney, Robert Cockerham, would contact her to secure a formal statement about the loss and that the previously discussed payment would not be mailed out.

In March 2008, AMHIC sent a letter to the Rollers advising them that the investigation of their claim was ongoing and advising them of the conditions agreed upon regarding cooperation with the investigation. In this letter, AMHIC reserved all rights and defenses under the insurance contract and Missouri law.

From June 2008 until February 2009, AMHIC repeatedly requested examinations under oath and various documents. In July 2008, through counsel, the Rollers requested a postponement of the examinations under oath and for equal good faith and cooperation from AMHIC in the investigative process. Later in July 2008, the Rollers objected to some AMHIC investigation requests and requested documents from AMHIC. The Rollers failed to submit to examinations under oath and produce the requested documents. AMHIC failed to produce all documents requested.

In February 2009, the Rollers filed a declaratory judgment action against AMHIC in Clay County, Missouri. AMHIC removed the case to federal court based on diversity jurisdiction, but it was remanded, and the answer and counterclaim were filed in Clay County in May 2009. After a bench trial on March 10, 2014, the trial court entered judgment for AMHIC on all counts. This appeal follows.

"This Court reviews a declaratory judgment action 'the same as in any other court-tried case.'" *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co.*, 464 S.W.3d 177, 183 (Mo. banc 2015). "The circuit court's judgment will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Id*. "We defer to the trial court's determinations of credibility and view the evidence and the inferences that may be drawn therefrom in the light most favorable to the judgment." *Schubert v. Schubert*, 366 S.W.3d 55, 62 (Mo.

4

App. E.D. 2012). "[W]here the findings of fact are derived from the pleadings, stipulations, exhibits and depositions, or where the evidence is not controverted, no deference is due the trial court's judgment." *Shelter Mut. Ins. Co. v. Crunk*, 102 S.W.3d 560, 561-62 (Mo. App. S.D. 2003). "We review questions of law *de novo*." *Clark v. Francis*, 422 S.W.3d 369, 377 (Mo. App. W.D. 2013).

## Legal Analysis

### Point I

In their first point, Mr. and Mrs. Roller argue that the trial court erred in ruling that AMHIC did not forfeit its right to deny coverage of their claim because AMHIC agreed to pay the policy limits of $10,500.00 without validly voiding the agreement by pleading or proving fraud, misrepresentation, mistake, or other unfair dealing. The Rollers assert that by stating that it "would be making a payment of the claim as to the garage," AMHIC accepted coverage on this claim and agreed to make a payment of $10,500.00, resulting in a binding contract. They further assert that AMHIC revoked or rescinded this agreement and "has never made any payment of the claim as to the garage." We disagree.

To require the pleading or proving of fraud, misrepresentation, mistake, or other unfair dealing to validly void an agreement, a valid agreement must exist. Under Missouri law, "[t]he essential elements of a contract are '"offer, acceptance, and bargained for consideration."'" *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. App. W.D. 2013), (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)). Consideration "consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. App. W.D. 2008).

Mr. Parrott's unilateral statement over the phone to Mrs. Roller does not create a valid contract because the payment would not be given in consideration for anything. *See Pierson v. Kirkpatrick*, 357 S.W.3d 293, 299 (Mo. App. S.D. 2012)(quoting *Tirmenstein v. Central States Basement & Found. Repair, Inc.*, 148 S.W.3d 849, 851 (Mo. App. E.D. 2004)("A legal, valid settlement agreement must possess all the essential elements of any other contract.")). The Rollers refer the court to *Stahly Cartage Co. v. State Farm Mutual Automobile Insurance Co.*, 475 S.W.2d 438 (Mo. App. 1971), to support their argument that Mr. Parrott's statement constituted a valid agreement. In *Stahly*, however, the promise of payment was made in exchange for a signed release. *Id.* at 440. Nothing similar occurred here. Instead, Mr. Parrott's statement advising Mrs. Roller of the possibility of payment was not made in

6

exchange for a completed action or a promise of one. Therefore, the communication between Mr. Parrott and Mrs. Roller does not constitute a valid contract comprising all essential elements under Missouri law, and that AMHIC did not plead fraud, misrepresentation, or other unfair dealing is irrelevant in resolving this issue.

In addition, the trial court was entitled to find that Mr. Parrott's statement was not sufficiently definite to support creation of an oral contract. Mr. Parrott testified that he told Mrs. Roller that, because of the existence of the "innocent spouse doctrine" in Missouri, "there was *a possibility* that we could make payment for the out-building." Mr. Parrott specifically denied that he told Mrs. Roller that AMHIC "was accepting this claim and making a payment"; he testified that "[i]f I'm guaranteeing that I'm going to make a payment, typically I'm writing the check right then." Mr. Parrott's statement that "there was a possibility" that AMHIC would pay the claim for damage to the garage is not sufficiently definite to support an oral contract. """An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.""" *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc 1995); *see also, e.g., State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 189 (Mo. App. W.D. 2011)(letter stating one party's opinion as to legal effect of events did not constitute a contractual "offer").

7

Furthermore, AMHIC did not, as asserted by the Rollers, forfeit its right to deny liability on their claim under the insurance policy. "Waiver may be express or it may be implied by conduct that clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right." *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. banc 1999). Waiver may not be used to create coverage where it does not already exist and cannot be used to hold an insurer liable for a claim where an exclusion applies to defeat coverage. *Whitney v. Aetna Cas. & Sur. Co.*, 16 S.W.3d 729, 733, 733 (Mo. App. E.D. 2000). "For conduct to imply waiver, the conduct must clearly and unequivocally show a purpose to relinquish the right such '"no other reasonable explanation of the conduct can be possible."'" *Kinney v. Schneider Nat'l Carriers, Inc.,* 213 S.W.3d 179, 183 (Mo. App. W.D. 2007). "The burden of proof for waiver is on the party asserting the defense." *Smith v. Progressive Cas. Ins. Co.*, 61 S.W.3d 280, 284 (Mo. App. E.D. 2001).

Although the Rollers assert that AMHIC relinquished its right to deny liability on this claim, they failed to introduce express or implied evidence that clearly and unequivocally shows AMHIC's intent to relinquish that right. In addition, AMHIC continuously reserved its rights and defenses in multiple letters written to the Rollers' counsel and provided by the Rollers to this Court. Therefore, the action of not paying the $10,500.00 to the Rollers, or any actions taken by AMHIC cannot be construed as a clear and unequivocal waiver of AMHIC's right to deny liability on this claim. Point one is denied.

**Point II**

In their second point, Mr. and Mrs. Roller argue that the trial court erred in ruling that the Rollers failed to submit to examinations under oath as required under the policy which also required AMHIC to act reasonably when making demands upon the insureds to submit to an examination under oath (examination). The Rollers assert that AMHIC acted unreasonably by making overly broad demands for production of documents and refusing to provide documents that contained Mr. and Mrs. Roller's statements. In addition, they argue that the trial court ruling was in error because AMHIC failed to make another request for an examination after the trial court declared and limited the scope of AMHIC's document request and because AMHIC failed to establish prejudice. We disagree.

Mr. Roller intentionally set fire to his property in a suicide attempt. After Mr. Roller's survival, Mrs. Roller made an insurance claim to recover for damage to the property he intentionally burned during his suicide attempt under the Rollers' AMHIC homeowners policy. The insurance policy specifically denies coverage for property that is intentionally damaged. To determine if the garage fire qualifies under this provision, AMHIC needed information regarding its circumstances. The Rollers in turn, failed to comply. The insurance policy states that, in case of loss, the insured must,

> f. as often as we reasonably require:

> \*\*\*

9

(2) provide us with records and documents that we request and permit us to make copies. These include, but are not limited to, tax records, bank statements, sales slips, and receipts.

(3) submit to examination under oath, while not in the presence of any other **insured person**, and sign the same;

Missouri courts have consistently acknowledged an insurer's right to a complete investigation of a claim, including examinations, and have found that the insured's failure to assist in the investigation precludes any coverage. *See Union Ins. Co. of Providence v. Williams*, 261 F. Supp. 2d 1150, 1152 (E.D. Mo. 2003)(holding that cooperation clauses are valid and enforceable under Missouri Law). "Once the insurer proves the material breach of a cooperation clause, the insurer may deny liability coverage under the policy." *Id.* at 1152. To successfully deny coverage, "the insurer must prove (1) the existence of substantial prejudice and (2) the exercise of reasonable diligence to secure the insured's cooperation." *Id.* "Cooperation clauses are designed to '"enable the [insurance] company to possess itself of all knowledge, and all information as to other sources of knowledge, in regard to facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims."'" *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029, 1032 (E.D. Mo. 2001)(quoting *Wood v. Allstate Ins. Co.*, 21 F.3d 741, 745 (7th Cir. 1994)). Prejudice can be established when the insured fails to comply with a reasonable examination request because the insured has "perhaps the greatest knowledge

of the circumstances[.]" *In re Am. Wood Concepts, LLC,* No. 08-50791, 2010 WL 1609690*, at \*4 Bankr.* (W.D. Mo. Apr. 20, 2010). Thus, "'[i]f an insured willfully and *without excuse* refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit.'" *Farm Bureau Town & Country Ins. Co. of Mo. v. Crain*, 731 S.W.2d 866, 871 (Mo. App. S.D. 1987*); see E. Attucks Cmty. Hous., Inc. v. Old Republic Sur. Co.,* 114 S.W.3d 311, 327 (Mo. App. W.D. 2003)(stating "we have no quarrel with the fact that an insured's refusal to answer questions under oath as to the underlying material facts of the claim can bar recovery.").

The Rollers argue that AMHIC acted unreasonably in its request for them to submit to an examination. They base their argument on *Knight v. Firemen's Insurance Co. of Newark, N.J.*, 49 S.W.2d 682, 686 (Mo. App. 1932), which held that a written notice served on the incarcerated insured with only forty-five minutes, notice was unreasonable.[1] The Rollers contend that the court's declaration in *Knight* that "[u]pon due and timely notice it would have been the duty of the insured to submit to an examination," exempts them from AMHIC's request because that request was outside not within the limitations imposed by the court's declaration. *Id*.

---

[1] In *Knight,* the insurer knew that the insured was confined in jail when he was served. Thus, the court found it unreasonable for the insured to be given forty-five minutes to secure the requested documents, and obtain his freedom, and appear at the place requested. 49 S.W.2d at 686.

11

Unlike the circumstances in *Knight*, AMHIC asked the Rollers repeatedly to submit dates at which they could appear for examinations. Their attorney consistently refused to attend any examinations "until document exchange issues [were] resolved." Compliance with an examination request is not generally contingent on disputes over the scope of document requests. These matters are rather dealt with independently. An insurer's right to a complete investigation also extends to the right to request the insured's financial records and other documents. *See Halford v. Am. Preferred Ins.*, 698 S.W.2d 40, 43 (Mo. App. E.D. 1985) (holding insurer had the right to insured's financial information where insurer had reason to believe insured intentionally set the fire), *abrogated on other grounds by Speck v. Union Elec. Co.*, 731 S.W.2d 16 (Mo. banc 1987).[2] "A request for production of documents must describe the documents sought 'with reasonable particularity,' and may not be so broad as to include matters outside the scope of reasonable discovery." *Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 746 (Mo. App. S.D. 1989). Therefore, even if AMHIC's document request were overbroad, compliance with the policy's examination requirement is not contingent on document submission; instead AMHIC is prejudiced by the inability to fully investigate the incident.

The Rollers argue that AMHIC was not prejudiced by their failure to comply with the examination request because they provided a modified "Sworn

---

[2] *Speck v. Union Elec. Co.*, 731 S.W.2d 16 (Mo. banc 1987), was superseded by Rule 74.01(b) as stated in *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).

Statement in Proof of Loss" and they and Mr. Roller's treating psychiatrist, Dr. Ross Shuman, submitted to questioning by an AMHIC attorney in depositions. This argument is unpersuasive because Missouri courts have consistently held that compulsory discovery in a lawsuit is no substitute for an insured's original cooperation. *See, e.g., In re Am. Wood Concepts*, 2010 WL 1609690 at *5("[A] deposition does not satisfy [the insured's] obligation under the [p]olicy to submit to an examination under oath"); *Union Ins. Co. of Providence*, 261 F. Supp. 2d at 1153 (rejecting insured's argument that submitting to a deposition cured her failure to submit to an examination); *Wiles*, 215 F. Supp. 2d at 1031-32 (finding insured's failure to submit to an examination prejudiced the insurer as a matter of law, despite insured's submission to a deposition after filing suit). Accordingly, it should not be necessary for an insurer to bear the expense of a law suit to enforce its right to an examination. *In re Am. Wood Concepts,* 2010 WL 1609690 at *5.

An insurer's right to a complete investigation also extends to the right to request the insured's financial records and other documents. *See Halford,* 698 S.W.2d at 43 (holding insurer had the right to insured's financial information where insurer had reason to believe insured intentionally set the fire).

In the instant case, the Court finds that AMHIC has established the Roller's material breach of the cooperation clause with respect to their obligation to submit to an examination. As noted above, AMHIC exercised reasonable diligence in attempting to secure the Rollers' cooperation through

13

multiple attempts at scheduling an examination. The Rollers instead deflected all examination requests, relying on a document dispute and later providing a deposition in conjunction with the claim's litigation. This Court further holds that AMHIC has clearly demonstrated prejudice. "By commencing this action on the Policy without submitting to an examination under oath, Plaintiff denied Defendant the opportunity to both complete its investigation and to issue a ruling on the claim." *Wiles,* 215 F. Supp. 2d at 1032. Therefore, the trial court properly entered judgment in favor of AMHIC on this point. Point two is denied.

**Point III**

In their third point, Mr. and Mrs. Roller argue that the trial court erred in ruling that AMHIC did not violate any of its duties under the Unfair Claims Settlement Practices Act or its duties of good faith and fair dealing. The Rollers further argue that the trial court erred in ruling that AMHIC did not forfeit its right to deny coverage because "AMHIC failed to act in good faith and failed to strictly comply with the standards set forth in 20 CSR100 for promptly, fairly and equitably investigating" the Rollers' property loss claims thereby breaching its contract and forfeiting its right to deny coverage.

Although the Rollers are not asserting specific violations under the Unfair Claims Settlement Practices Act, they assert that the Act and regulations identify specific standards of conduct that become a part of every insurance policy and, if they are violated, the insurer is in breach of contract and forfeits

14

its right to deny coverage if violated. Essentially, the Rollers argue that the Unfair Claims Settlement Practices Act creates an implied covenant of good faith and fair dealing which should be remedied by a forfeiture of the insurer's right to deny liability. We disagree.

The Unfair Claims Settlement Practices Act states that it "shall [not] be construed to create or imply a private cause of action." Section 375.1000.1. This statement clearly counters the Roller's argument. In addition, the act plainly provides that enforcement is limited to the Director of Insurance and sets forth the only available penalties for violations which include a monetary penalty or revocation of the insurer's license. Sections 375.1009-1012. The Act does not establish a method for the waiver of the insurer's right to deny coverage or any private enforcement. *Id*. The Rollers suggest that this issue was partially raised in *Stark Liquidation Co. v. Florists' Mutual Insurance Co.*, 243 S.W.3d 385, 400-01 (Mo. App. E.D. 2007). The issue in *Stark Liquidation,* however, was whether an insurer's violation of the Act could provide a basis for a vexatious refusal to pay a claim; waiver was not at issue. *Id*. In fact, a question of waiver was never raised, so the case does not support the Rollers' argument.[3] Furthermore, Missouri courts have rejected the argument that an alleged Uniform Claims Settlement Practices Act violation, unsupported by

---

[3] The Rollers also rely on *Clark v. Progressive Preferred Insurance. Co.*, 390 S.W.3d 208 (Mo. App. W.D. 2012). This case does not address waiver and does not provide insight on implied duties arising from the United Claims Settlement Act. Instead, without mentioning a statute or regulation, this Court held that an insurer's notice of cancellation was ineffective under the terms of their policy, and, thus, the policy was still in effect. *Id*. at 214.

express or implied intent, waives the insurer's right to deny coverage. *Gannon Int'l, Ltd. V. Lexington Ins. Co.*, No. 4:07-CV-31 CAS 2008 WL 3244027, at *3-4 (E.D. Mo. Aug. 6, 2008). Therefore, the Rollers' argument that AMHIC breached its implied duties of good faith and fair dealing created under the Unfair Claims Settlement Practices Act is without merit. Point three is denied.

### Point IV

In their final point, Mr. and Mrs. Roller argue that the trial court erred in ruling that no coverage exists under the insurance policy for the loss resulting from a fire intentionally set by Mr. Roller because Missouri law provides an exception under which an intentional act committed while insane is an accident.

Appellants cite multiple cases recognizing a difference in intent depending on whether the suicide is sane or insane. *See Edwards v. Bus. Men's Assur. Co. of Am.*, 168 S.W.2d 82, 94 (Mo. 1942)("Again, respondent uses the word 'suicidal' in the sense of intentional self-destruction while sane, but an insane suicide is not truly suicide, because an insane intent or insane impulse resulting in the action causing death is no intention at all, and therefore death by insane suicide is accidental."); *Garmon v. Gen. Am. Life Ins. Co.*, 624 S.W.2d 42, 44 (Mo. App. E.D. 1981)("It has long been the rule in Missouri that the taking of one's own life while sane is not an accident while intentional suicide while insane is an accident. Thus, the only question for the jury was whether or not the insured…was sane or insane at the time he committed

16

suicide.")(citations omitted).  To adequately address this point, we must first determine if Mr. Roller was insane when he attempted suicide.

"'[I]nsanity' is a legal, and not a medical term."  *Harris v. General Am. Life Ins. Co.*, 902 F. Supp. 1007, 1010 (E.D. Mo. 1995).  Sanity is presumed until the adjudication of insanity, placing the burden of proof on the party asserting insanity as the basis of a claim or defense.  *Schuler v. Schuler*, 290 S.W.2d 192, 196 (Mo. App. 1956).

> "The criterion of insanity… is whether the insured was so far mentally unsound that he could not exercise a rational judgment upon the question of life and death; whether he was oblivious to the duties which he owed his family, to his friends, and to himself; whether he was impelled by a morbid impulse which he had not sufficient strength of will to resist."

*Laventhal v. N.Y. Life Ins. Co.*, 40 F. Supp. 157, 159 (E.D. Mo. 1941).  It is important to note that "[n]ot all persons suffering from diagnosable mental diseases or impairments are necessarily 'insane' as [the] term is used in the Missouri suicide cases."  *Harris*, 902 F. Supp. at 1010.  Therefore, the court must decide "whether [the insured] was capable of knowing the difference between right and wrong at the time of the act."  *Id.*

17

No evidence in the record indicates an adjudication of insanity.[4] Thus, we must presume that Mr. Roller was sane when he intentionally set the fire in his attempt to commit suicide.

The exclusions section of Mr. and Mrs. Roller's insurance policy states in part,

> Loss that results from an action or omission by or at the direction of any **insured person**, committed with the intent to cause loss or damage. This exclusion applied even if the **insured person** is insane, intoxicated or otherwise impaired if a person without that impairment who committed such an act would otherwise be deemed to have acted with the intent to cause loss or damage.

This provision is replaced by a portion of the Manufactured Homeowners Amendatory Endorsement—Missouri, which states in part,

> Exclusion 14. is replaced by the following:
>
> a. Intentional Loss, which means any loss arising out of any act an **insured person** commits or conspires to commit with the intent to cause a loss. In the event of such loss, no **insured person** is entitled to coverage, even **insured persons** who

---

[4] The trial court's order and judgment does not acknowledge Mr. Roller's alleged insanity and accords with a finding that the fire was an intentional act. In addition, Dr. Shuman's deposition does not support an insanity finding. It is simply a diagnosis of Mr. Roller's mental disorders.(*See* specifically:

> Q: Okay. Did you ever diagnose Mr. Roller as being insane?
> A: Well, that would be major depressive disorder with psychotic features.
> Q: Is that – insane isn't a medical term, is it?
> A: No, it's not, but the common—psychosis and insanity are—broadly speaking, refer to the similar condition. I mean, people think Charlie Sheen is insane. I don't know if he's psychotic, or not, but—
> Q: But still, that doesn't change your earlier opinion that you gave me regarding Mr. Roller's understanding.
> A: No. I think that this gentleman—well, all I can say is that he was suffering from a major depressive disorder with psychotic features, so he was clearly mentally ill, there's no question about that.
> Q: Sure.
> A: But he also states that he intended to set fire to the house, and he did.

18

did not commit or conspire to commit the act causing the loss.

The only relevant change effected by the amendatory endorsement is that the policy no longer excludes acts committed by the insured when insane. Because Mr. Roller is presumed to be sane during his suicide attempt, it is clear that the Homeowners policy does not cover the damage from the fire. The undisputed evidence demonstrates that Mr. Roller understood that he was setting a fire and that he carried out the burning of his property with a clear plan and with the intent to do so. Accordingly, we hold that the trial court did not err in ruling that there is no coverage under the insurance policy. Point four is denied.

## Conclusion

Upon review, this Court holds that the trial court did not err in ruling that there is no contractual agreement between the Rollers and AMHIC for payment for the damaged garage, no unreasonable request for an examination under oath as required by the insurance policy, no implicit duties created by the Unfair Claims Settlement Practices Act or violations thereof, or coverage under the insurance policy for loss resulting from a fire intentionally set. Therefore, we affirm the trial court's judgment.

/s/THOMAS H. NEWTON
Thomas H. Newton, Judge

Ahuja, C.J., and Byrn, Sp.J. concur.

19